O5LJCHEC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    CHEMIMAGE CORPORATION,

4                   Plaintiff,

5              v.                          24 Civ. 2646 (JMF)

6    JOHNSON & JOHNSON, *et al.*,

                                           Conference
7

8                   Defendants.

     ------------------------------x
9                                          New York, N.Y.
                                           May 21, 2024
10                                         10:15 a.m.

11   Before:

12                     HON. JESSE M. FURMAN,

13                                         District Judge

14                         APPEARANCES

15   QUINN EMANUEL URQUHART & SULLIVAN LLP
          Attorneys for Plaintiff
16   BY:  COURTNEY C. WHANG
          ANDREW J. ROSSMAN
17

18   PATTERSON, BELKNAP, WEBB & TYLER LLP
          Attorneys for Defendants
19   BY:  RACHEL B. SHERMAN
          CHRISTOPHER WILDS
20        EMMA ELLMAN-GOLAN

21   Also Present:

22   Colett Juran, Summer Associate

23

24

25

O5LJCHEC

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, please state your name for

3    the record.

4          MS. WHANG:  Good morning, your Honor.

5          Courtney Whang from Quinn Emmanuel for plaintiff

6    ChemImage Corporation.  Also with me is Andrew Rossman,

7    principal trial counsel, in accordance with your Honor's rules,

8    and a summer associate at Quinn Emmanuel, Collet Juran.

9          MS. SHERMAN:  Good morning, your Honor.

10         Rachel Sherman from Patterson Belknap on behalf of the

11   defendants.  Here with me is my colleague, Chris Wilds and Emma

12   Ellman-Golan from Johnson & Johnson.

13         THE COURT:  All right.  Good morning to you as well.

14         So we're here for an initial pretrial conference which

15   I restored in the calendar after request to do so, given the

16   parties' agreement about the speed of this litigation.  I know

17   it seems like there might be disagreement about whether and to

18   what extent I should endeavor to set a schedule that's

19   consistent with that, something I definitely want to hear from

20   you about.

21         I will say in 12 years on the bench I've never

22   encountered a provision like this, and it strikes me as unusual

23   and to some extent problematic to the extent that it purports

24   to or tries to bind a Court to adjudicate something on the

25   parties' schedule, which is to say I don't know why by contract

O5LJCHEC

1    parties should be entitled to sort of jump the queue, so to

2    speak, and get a Court to adjudicate something more quickly

3    than it would normally do.  That being said, I may be able to

4    do it even with the normal queue, so it may be a moot point.

5           I did notice in the Exhibit C, or attachment C --

6    appendix C to the agreement, which includes the eight-month

7    timeframe that plaintiff is relying on here, there seems to be

8    an internal inconsistency because the next paragraph says that

9    both sides agree to conduct discovery in a manner and on a

10   schedule designed to complete of discovery — so that's a typo

11   of some sort — within nine months after office of the first

12   complaint.

13          And I'm not sure how to square that with the paragraph

14   before, which is an agreement to put it on a schedule that will

15   assure, quote/unquote, trial-ready status eight months after

16   service of the first complaint.  One would think a discovery

17   period that exceeds the period in which something is to be made

18   trial ready doesn't make a whole lot of sense, so not sure how

19   to square those.  But in any case, wanted to bring you in and

20   talk about how to proceed in this matter and go from there.

21          I think it might be helpful to start with whether

22   plaintiff intends to file an amended complaint.  I think, if

23   I'm not mistaken, the deadline to do that is this week on

24   Friday, if I'm not mistaken.  So Ms. Whang, do you want to fill

25   us in on your plans on that score?

O5LJCHEC

1          MS. WHANG:  Yes, your Honor.

2          So plaintiff is considering filing an amended

3    complaint.  However, I will say that the provision expressly

4    contemplates this.  You'll see — and I have copies if it's

5    helpful for the Court — of the expedited litigation provision.

6    Do you need a copy?

7          THE COURT:  No.

8          MS. WHANG:  Okay.  So --

9          THE COURT:  Assuming you're talking about appendix C.

10         MS. WHANG:  Appendix C, exactly.

11         So on the second page of appendix C, it's expressly

12   contemplated that the eight-month trial-ready provision is

13   pegged off of the first complaint.  It says that language very

14   specifically.  So plaintiffs are considering amending their

15   complaint.  But again, the eight-month trial-ready provision

16   contemplates that.

17         I do want to address your Honor's questions about how

18   do we square this, and I think the first place to start is the

19   text of the eight-month trial-ready provision.  But before

20   doing that, a little bit about the background.  This provision,

21   I understand, was proposed by defendants themselves.  This

22   wasn't a proposal by the plaintiff here.  It was proposed by

23   defendants.  And the parties agreed to this, and then they

24   inked this agreement that has this very specification language.

25   The language says that the case should be trial ready within

O5LJCHEC

1    eight months and not presuming to bind the Court to make any

2    decisions within that time, but just that the parties would

3    ensure that the case would be trial ready within that

4    eight-month period.

5                So the eight-month trial-ready provision, while very

6    unique, is also doable in this case.  Because if you look

7    further in this agreement, further in this expedited litigation

8    provision, it provides for streamlined discovery.  And this

9    streamlined discovery is quite unique as well, right.  It's

10   only 40 hours of deposition per side, that's inclusive of the

11   fact, and expert discovery that's very streamlined.  And it

12   also says that the discovery requests for electronically stored

13   information will have the streamlined request process.  When

14   you combine those things, this expedited litigation provision

15   is not only unique, but shows that the eight-month trial-ready

16   provision is absolutely achievable.

17               Now, your Honor asked how do you square the

18   discrepancy or the seeming discrepancy with the nine-month

19   discovery.  It says nine months after service of the first

20   complaint for discovery, and I think the answer there is

21   twofold.  Number one, you know, back to black letter basics of

22   contract interpretation, we go to what is the intent of the

23   parties.  Here, you if you look at the heading of this

24   provision, it's called "expedited litigation."  You can tell

25   that the intent of the parties is to move quickly and be trial

O5LJCHEC

1  ready within eight months.

2         Number two, we go back to black letter contract

3  interpretation principles.  And hard book law says that you

4  can't read one provision to the exclusion of the other, right,

5  you should try and harmonize these two provisions.  And in

6  order to do that, you read the exact words within the

7  nine-month provision, it says that you should enter a schedule

8  designed to complete discovery — if you take out the rogue "of"

9  — within nine months after service of the first complaint.  We

10  can complete discovery within nine months.  It will be less

11  than nine months, and that's the only way to read that

12  consistent with the eight-month trial-ready provision.

13         THE COURT:  Okay.  And with respect to your potential

14  forthcoming amendment, since it's only three days away, one

15  imagines that you have some sense of what the amendment would

16  entail.  Can you preview that and whether and to what extent it

17  goes beyond addressing the arguments in defendant's motion?

18         MS. WHANG:  So the scope of the amendment would be

19  very minor.  Here, it's notable that defendants have only made

20  a partial motion to dismiss.  So the contemplated amendment

21  would not change the scope of the claims -- for example, would

22  not change the scope of the facts that are contemplated by the

23  current claims.

24         It wouldn't change discovery in the same way the

25  partial motion to dismiss here, which is not a reason why the

O5LJCHEC

1    eight-month trial-ready provision could not be -- a schedule

2    could not be entered consistent with the eight-month

3    trial-ready provision because that contemplated -- or the filed

4    motion to dismiss, rather, is only a partial motion to dismiss.

5    The claims that the defendants have not moved on will still

6    inform discovery in the exact same scope and manner as if

7    defendants had not filed that motion and if plaintiffs were not

8    filing an amended complaint.

9            THE COURT:  Okay.  And can you answer my question,

10   which is what is the nature of the amendments?  Not just

11   they're minor, what are you actually changing?

12           MS. WHANG:  So one of the amendments that we are

13   contemplating is making more clear that the breach of contract

14   claim will have a specific request for relief in the

15   $40 million termination fee.  One of plaintiff's arguments in

16   their motion to dismiss is that the damages that go beyond the

17   $40 million termination fee should be stricken or removed from

18   the complaint.  So plaintiffs are contemplating amending to

19   make clear that based on the existing allegations, that the

20   $40 million termination fee is also included in their prayer

21   for relief, so an example of a very minor amendment.

22           THE COURT:  Okay.  And anything beyond that?

23           MS. WHANG:  There may be additional facts to support

24   existing causes of action, no additional causes of action.

25           THE COURT:  Okay.  Let me hear from defense counsel.

O5LJCHEC

1    Ms. Sherman?

2             MS. SHERMAN:  Thank you, your Honor.

3             So at the outset, I don't think we've gotten a clear

4    answer on whether or not ChemImage is going to amend its

5    complaint on Friday, which really brings home the point we

6    don't yet know exactly which claims and which defendants are

7    going to be in the case.  And we're generally willing to abide

8    by an eight-month schedule.  But I think in order for that to

9    be realistic, we need to have an understanding of which claims

10   are going to survive the motion to dismiss.  And I would

11   actually agree with plaintiff that the contract itself

12   contemplates a fairly expedited dispute resolution process, but

13   that is in conjunction with the other clear limitations within

14   the contract, including a $40 million limitation in the event

15   of a termination.

16            So all of that has to be read together.  And instead,

17   what plaintiff has pleaded thus far is a complaint that goes

18   far beyond the damages contemplated by the contract that brings

19   in parties, J&J that is not a party to the contract, that adds

20   tort claims against J&J.  And on top of that, they then served

21   extremely broad document discovery including things like asking

22   for all documents related to Johnson & Johnson's entire

23   robotics program, strategic plans, funding, other acquisitions

24   that were considered and chosen not to enter into.

25            So they have made clear that they intend to litigate a

O5LJCHEC

1    very broad case, and that is not feasible to do within the time

2    period that they have proposed.  So in addition to needing

3    clarity, I think there's going to be some necessary

4    negotiations and compromises on the scope of the discovery

5    that's being sought.

6         Both sides agree there will need to be expert

7    discovery.  But I would point out, your Honor, that if our

8    motion to dismiss is granted and these extra contractual lost

9    profits claims are dismissed, then there will not need to be

10   extensive damages discovery.  We will not need damages experts.

11   The case will become narrower.

12        Similarly, I disagree with Ms. Whang that the motion

13   to dismiss has no potential impact on the scope of discovery.

14   Because in addition to the damages issue, Johnson & Johnson may

15   not be in the case following resolution of that motion, and

16   certainly that would limit the scope of discovery of potential

17   custodians, all of the ESI that is sought from Johnson &

18   Johnson.

19        And we are not taking the position that there might

20   not be any relevant discovery from Johnson & Johnson.  But

21   certainly it would be a much narrower request if the tortious

22   interference claim is thrown out and the contract claim against

23   Johnson & Johnson.  So I think our position is that we should

24   have clarity on what the amendment actually looks like, have a

25   ruling on the motion to dismiss.  And we will continue to work

O5LJCHEC

| | |
|---|---|
| 1 | with plaintiff in the meantime to try to work out the discovery |
| 2 | disputes that we know we're going to have about the claims that |
| 3 | we know will be in the case.  So we're willing to continue to |
| 4 | move toward while that motion is pending.  But I think for |
| 5 | purposes of efficiency and fairness, frankly, we need to have |
| 6 | an understanding of what claims we're litigating and the |
| 7 | ability to actually do that within the time period that's being |
| 8 | proposed. |
| 9 | THE COURT:  And do you agree that the provisions of |
| 10 | appendix C governing streamlined discovery, that is to say |
| 11 | limitations on deposition time, the nature of the request for |
| 12 | email, and other, that they apply here? |
| 13 | MS. SHERMAN:  In general, yes, your Honor. |
| 14 | There may be instances, you know, if they come out |
| 15 | with seven experts, it may be that we need to expand the |
| 16 | discovery to ensure that we can depose all of their experts. |
| 17 | But I think our intention is to comply with the spirit of this |
| 18 | provision but do it in a way that ensures that our clients get |
| 19 | the discovery they need in order to prepare this case for |
| 20 | trial. |
| 21 | THE COURT:  All right.  Ms. Whang, let me turn back to |
| 22 | you and ask you two direct questions, which is, one, if you |
| 23 | amend, will J&J be a named defendant in the amended complaint? |
| 24 | MS. WHANG:  Yes.  J&J will continue to be a named |
| 25 | defendant in the amended case.  The parties are not changing |

O5LJCHEC

1    whatsoever.  And even if you contemplate the motion to dismiss

2    that seeks to strike one of the claims or two of the claims

3    against J&J, J&J is still participating in discovery in this

4    case as a fundamental participant in this contract, as somebody

5    who appointed members to the JSC, which is a critical

6    decision-making body in the context of this dispute.  J&J will

7    absolutely continue to be a part of this discovery, whether or

8    not they are a defendant in this case.  That does not change

9    the scope of who will be producing relevant information here.

10           THE COURT:  And second, am I correct in inferring from

11   what you said earlier that any amended complaint would also

12   include the request for consequential damages beyond the

13   $40 million termination fee?

14           MS. WHANG:  No, your Honor, that's not correct.

15           The amended complaint is simply going to make sure

16   that on the existing contract claim, that we are seeking the

17   failure to pay the $40 million termination fee.  The existing

18   complaint seeks direct damages of the failure to pay regulatory

19   and developmental milestones and lost profits and royalties --

20   or excuse me, lost royalty payments, which the contract very

21   uniquely coins direct damages in this matter.

22           THE COURT:  So I'm confused.  The amended complaint

23   would seek only the $40 million termination fee in connection

24   with the breach of contract or also I think it was $1.2 billion

25   that you're seeking in the complaint.

O5LJCHEC

1          MS. WHANG:  In the current complaint, that's correct.

2    The amended complaint, in somewhat of a unique fashion in

3    response to the motion to dismiss arguments, will make more

4    clear that ChemImage is also seeking the $40 million with

5    respect to the failure to pay the termination clause because of

6    the unique arguments that defendants have advanced in their

7    motion to dismiss along the lines of, well, you know, we didn't

8    really terminate under the for-cause provision.  We could have

9    terminated without cause, therefore, the $40 million

10   termination fee that's attended to the without-cause provision

11   should be a cap on damages.

12          It's in response to that unique argument advanced in

13   defendant's motion to dismiss.  Does not change the scope of

14   the claims at all.  So it would seek both the $1 million

15   royalty damages in addition to the $40 million termination fee

16   so as not to run into any argument down the line that plaintiff

17   has waived that.  That's the nature of the proposed amendment.

18          And I apologize.  I did not mean to suggest that we're

19   not trying to give the Court a clear answer on whether we're

20   going to amend.  We saw the notice from the Court giving us

21   leave to do so, and it's with the client and they're deciding.

22   So I didn't want to commit one way or the other without being

23   able to get that confirmation.

24          THE COURT:  Understood.

25          And anything else you want to say in response to what

O5LJCHEC

1    Ms. Sherman said?

2         MS. WHANG:  Just briefly I'm a little concerned about

3    Ms. Sherman's response to your Honor's question:  Do you intend

4    to abide by the rest of the streamlined discovery provisions in

5    the contract?  I'm a little concerned about the response that

6    yes, we intend to abide by the spirit of the contract.  The

7    contract is very clear, which is why we're here asking for a

8    case management order to be entered consistent with the

9    eight-month trial-ready provision.

10        The suggestion that there should be leeway with

11   respect to the also very specifically negotiated and, like your

12   Honor said, unique provisions streamlining discovery which

13   would make that eight-month trial-ready provision doable is

14   something that plaintiffs would seek to enforce as well.

15        THE COURT:  All right.  So let me answer one question,

16   which is I am going to enter a case management plan today.

17   Under other circumstances I might well wait until a rule on the

18   motion to dismiss.  But, number one, it's only a partial motion

19   to dismiss.  Number two, the law is clear that there's

20   certainly no entitlement to a, stay, if you will, or not

21   proceeding with discovery pending a motion, and it's within my

22   discretion.

23        Given that it's partial and given the parties'

24   agreement, which defendants appear to concede at least in some

25   respects applies, I think it makes sense to plow ahead and

O5LJCHEC

1   begin and proceed with discovery, notwithstanding the pending

2   motion.  I'll certainly try to resolve any new motion, if

3   there's an amended complaint, in relatively quick fashion, and

4   thereby ensure that you understand or have a sense of the scope

5   of the case sooner rather than later.

6          But whatever the case may be, I think plaintiff is

7   entitled to proceed with discovery in the meantime.  So I will

8   be entering a case management plan today, and it will be full

9   speed ahead on that front.  I'm happy to speak about the

10  proposed deadlines or I guess hear from Ms. Sherman, since

11  defendants' proposed deadlines were pegged to my decision on

12  the motion to dismiss, and I'm not going to take that approach.

13         So I guess the question I have for you is I know,

14  given the language of the parties' agreement — and I think

15  Ms. Whang does provide at least a plausible way to reconcile

16  the two paragraphs that I flagged — that is to say discovery

17  within nine months, why shouldn't I set the deadlines that

18  plaintiff is proposing, at least in the first instance, and try

19  to keep this on track consistent with the parties' agreement?

20  Ms. Sherman?

21         MS. SHERMAN:  Your Honor, we're certainly willing to

22  move forward with discovery.  I guess we would suggest that a

23  slightly longer period than that proposed by the plaintiff.  I

24  think if we could have until roughly the end of September for

25  fact discovery, at least a month for opening expert reports, a

O5LJCHEC

month for rebuttal, a month to conduct depositions with summary

judgment to be filed a month after that, I think that's still

about eight months from today, which is generally moving on a

pretty quick track.

But I think what they have proposed is too

circumscribe because, one, it doesn't provide for ample time

for the service of expert reports and completion of expert

discovery; and, two, they want to have summary judgment fully

briefed, I think, within two weeks after the close of expert

discovery, which just isn't feasible when any summary judgment

necessarily is going to rely on experts to some degree. So I

think we need a little bit more spacing than what they've

proposed, but we're certainly willing to move forward.

THE COURT: All right. Let me pause to say one thing

about summary judgment, which is, as you probably saw in my

proposed case management plan and individual rules and

practices, my sort of heavy presumption in a bench trial case —

this is a bench trial case — is not to have summary judgment

motion practice, but, rather, to proceed directly to trial.

The reason being twofold, one, is the way I handle

bench trials is with direct testimony by affidavit for most

witnesses, so the filings in that regard are similar to those

that would be filed in connection with summary judgment.

Number two, is it's just in my experience a faster way to get a

case across the finish line because I can make findings and

O5LJCHEC

1    then give you rulings rather than deciding on the basis of

2    summary judgment motion papers that there's a dispute of fact

3    that requires trial and then essentially repeating the

4    exercise.

5          I think there's a third reason to stick with that

6    approach here, which is it's a lot easier to comply with the

7    language of the parties' agreement because there wouldn't be

8    summary judgment, and it would be trial ready because we would

9    go to trial at the conclusion of discovery.  So unless one or

10   both sides make a pretty strong argument or case for why I

11   should deviate from that practice and entertain a summary

12   judgment motion, I will tell you now that in all likelihood

13   we'll proceed directly to bench trial at the conclusion of

14   discovery.  So that's number one.

15         Number two, I guess I hear you.  But it strikes me --

16   well, I guess let me ask a question before I give you further

17   thoughts.  Is this clearly a case where expert discovery has to

18   await the conclusion of fact discovery?  Or is it possible to

19   proceed in tandem, at least with respect to some of the

20   experts?  I don't know what kind of expert discovery we're

21   talking about.

22         MS. SHERMAN:  Well, I think to the extent that we can

23   get experts started, we will certainly do so.  But a large

24   degree of the data that our experts will need in order to

25   analyze the technology that ChemImage has is in ChemImage's

O5LJCHEC

1  possession.  So we have not gotten the underlying data that

2  supports the report that they presented to Ethicon to say that

3  their technology had met the milestone.  So at a minimum, we

4  are going to need some document production before our experts

5  can get started.

6         On the damages front, obviously that will depend to a

7  degree on what your Honor does with respect to the motion and

8  what types of damages they purport to put forth.  But I think

9  as to the technical specifications and the technical analysis

10  of whether their technology has passed the milestone, we do

11  need discovery from them.

12         THE COURT:  Okay.  And can you tell me what expert

13  discovery you envision, damages, and whether they met the

14  milestone or is that --

15         MS. SHERMAN:  At a minimum, we intend to have one or

16  more experts to analyze the data that they presented and offer

17  an opinion as to whether or not their technology worked and

18  whether or not it met the specifications that the parties

19  agreed to for purposes of determining feasibility.

20         THE COURT:  Okay.  Ms. Whang?

21         MS. WHANG:  So I want to start with the case

22  management order and then move on to experts.

23         So on the case management order, I'd like to start

24  with where I think we have agreement.  I heard Ms. Sherman say

25  that with respect to fact discovery, end of September made

O5LJCHEC

1    sense here.  We've proposed September 19, which is in

2    accordance with your Honor's rule.  That's about 120 days from

3    the initial pretrial conference.  In fact, I think you might

4    have to move that up a day if you calculated it based on

5    today's new conference date.  But it seems like we're aligned

6    on September 19 or 18 as working for end of fact discovery.

7         Moving to the close of expert discovery, plaintiffs

8    proposed in their proposed case management plan November 25.

9    Notably, that's about 67 days from the close of fact discovery.

10   Your Honor's form case management plan asks that fact discovery

11   be done in 45 days, absent exceptional circumstances.  So ours

12   accommodates what I think defendants' argument is with respect

13   to highly technical data, but it also adheres more closely to

14   your Honor's form rules.

15        That said, this is not a hyper-technical case, as

16   defendants have argued, in a way that should change the case

17   management plan.  Here I think we're talking about two experts,

18   three at most, somebody on the damages front and then somebody

19   to discuss why the milestone was met or why the data that went

20   into the analysis showing why the milestone was met was sound.

21        And the other piece of the case management order that

22   doesn't touch discovery is the length of trial.  That's where

23   the parties submitted differing proposals.  Plaintiff's

24   proposal was five trial days; defendants' was ten.  Here, just

25   speaking from a practical perspective, plaintiffs having the

O5LJCHEC

1    burden of proof, we're estimating five days.  This is, like

2    your Honor mentioned, a nonjury trial where the scope of

3    discovery has been cabined quite significantly to 40 hours of

4    deposition testimony per side, something that we endeavor and

5    think we will be able to do in no longer than five trial days.

6        And something that is not in the form case management

7    plan but that we would like, if possible, for the Court to

8    include is memorializing a date with respect to being trial

9    ready.  The agreement that we talked about at length this

10    morning has the eight-month trial-ready provision.  We talked

11    about how summary judgment, absent extraordinary circumstances,

12    won't be an issue here.  So if we can go ahead and memorialize

13    that or set a final pretrial conference consistent with that

14    agreement, I think that would go a long way to helping keep the

15    parties on track to meet the eight-month trial-ready provision

16    that's in the agreement.

17        THE COURT:  Okay.  I think there's a question in my

18    mind as to what trial ready means.  One could imagine that

19    everything done except your trial submissions, given that we're

20    proceeding as a bench trial, qualifies as trial ready.  Or one

21    could imagine everything except literally appearing in court

22    for trial.  I think I'm not going to dot that today.

23        Ms. Whang, do you want to address expert discovery on

24    what you anticipate on that score?  Or are we essentially

25    talking a damages expert, assuming that the motion isn't

O5LJCHEC

1    granted on that front, and experts on whether the technology

2    met the requirements, etc.?

3            MS. WHANG:   Exactly.  So I was referring to

4    plaintiff's expert case when I said two experts, potentially

5    three.  So exactly as your Honor just mentioned, a damages

6    expert, and somebody to analyze whether the milestone was met

7    and/or to opine on the data practices that went into showing

8    that the milestone was met, so a fairly conscribed expert case

9    as well.

10           Notably, the 40-hour cap on depositions is inclusive

11   of fact and expert discovery.  So I'm not sure this is the kind

12   of case where — I heard Ms. Sherman say something like seven

13   expert reports — I'm not sure that that makes sense given the

14   parties' cap of 40 hours as to deposition testimony.  I guess

15   there would be a world in which somebody could put in an expert

16   report and forego the opportunity to take a deposition with

17   respect to that expert, but that would be unusual heading into

18   trial.  So I don't envision that's going to be the case where

19   we see an abundance of expert reports, given the cap on

20   depositions.

21           THE COURT:  Got you.  All right.

22           So I think in the first instance, at least, I am going

23   to adopt plaintiff's proposed deadlines of September 19 and

24   November 25.  I do so for a couple reasons.  One is I would

25   note that the September 19 date is, as Ms. Whang notes, not far

O5LJCHEC

1    off from what Ms. Sherman agreed was feasible.  Number two,

2    that schedule at least leaves the possibility open of meeting

3    the eight-month framework that the parties did agree to.  And

4    number three, I think better to be ambitious and aggressive in

5    the first instance and see where things stand.

6            It strikes me from hearing Ms. Sherman that it seems

7    like the parties agree that fact discovery, especially with the

8    parameters that the parties agreed to in appendix C, can be

9    done by that September date.  The bigger question is expert

10   discovery.  Two reasons I'm going to adopt the more aggressive

11   schedule in the first instance, aside from what I've already

12   mentioned, one, is that depending on my ruling on the motion,

13   it may be that there's less expert discovery to be done, as

14   Ms. Sherman notes.

15           Number two, it certainly sounds to me like it may be

16   possible to begin expert discovery even before fact discovery

17   closes.  And that's something I'm going to ask you to confer

18   about sooner rather than later.  And especially mindful of the

19   streamlined nature of discovery that the parties have agreed

20   to, it may be that the data that Ms. Sherman says is needed for

21   one or more of the experts to proceed is something that you can

22   prioritize and get sooner rather than later so that those

23   experts can actually begin their work sooner and, to the extent

24   that defendants believe that a longer schedule is needed for

25   expert discovery with exchange of reports and what have you,

O5LJCHEC

1    you can actually do that even before the close of fact

2    discovery.

3              So bottom line is you should assume that those dates,

4    September 19 and November 25, are fixed and firm dates and

5    aren't going to change.  I will do my best to ensure that that

6    remains the case, and you should proceed accordingly including

7    the ways that I've just suggested.

8              Let me say a couple things more broadly.  First, and

9    consistent with what I just said, while the interim discovery

10    deadlines that are set forth or will be set forth in

11    paragraph 9 of the case management plan are subject to change

12    by written agreement between you, and you don't need my

13    permission to change those dates, you do need my permission to

14    change the two dates that I just set and mentioned,

15    September 19 and November 25.

16              As I said, do not anticipate that those dates will be

17    extended, and you should proceed accordingly.  If something

18    arises that you think makes it impossible to meet those

19    deadlines, you can certainly raise the issue.  You better raise

20    it in advance of the deadline, and you better raise it by

21    letter motion filed on ECF.  And it better make a good case,

22    especially given appendix C to the parties' agreement, for why

23    that is necessary and it's not for lack of due diligence on

24    your part.

25              Bottom line is you know the clock is ticking.  You

O5LJCHEC

1    agreed to the agreement, at least Ethicon did, and it's on you

2    to do what you need to do to get it done within this aggressive

3    time schedule.  And if you don't do what you need to do to get

4    that done, I'm telling you that you're not likely to get

5    additional time, so proceed accordingly.

6          If there are discovery disputes along the way, you're

7    required under paragraph 11 of the case management plan and my

8    individual rules and practices to confer with one another in an

9    effort to resolve those disputes.  If you do that and any

10   issues remain in dispute, then either side can file a letter

11   motion not to exceed three pages.  The other side has three

12   business days in which to respond, and I will resolve the issue

13   promptly either by bringing you in for a conference or

14   resolving the issue, including the underlying issue, by order.

15         So bottom line being, number one, try to work things

16   out.  Given the parties' agreement, given the expedited

17   schedule, that's certainly the best way forward, most efficient

18   path forward.  But in the absence of agreement, there is a

19   process in place to resolve things for you, and you better

20   avail yourself of it.  If you wait until discovery is about to

21   be over to raise an issue that you could have and should have

22   raised sooner, I can assure you that you're not going to get

23   whatever it is that you think you're entitled to, and you're

24   not going to get additional time either.  So keep both of those

25   in mind.

O5LJCHEC

1          Given the nature of the case, the issues we've

2    discussed, I'm going to deviate from my usual practice, which

3    is to have you in shortly after the close of fact discovery.

4    And instead, I'll have you in a month or so before the close of

5    fact discovery to see where things stand and discuss further

6    the other issues that we've discussed and left open, including

7    bench trial practices and deadlines and what have you.

8          In particular, I would propose a status conference on

9    August 14 at 9:00 a.m.  If we hold that conference, which I

10   would anticipate -- actually, you know what?  Let's make it

11   August 14 at 10:00 a.m.  Does that date and time work for

12   everybody, Ms. Whang?

13          MS. WHANG:  Yes, your Honor.

14          THE COURT:  Ms. Sherman?

15          MS. SHERMAN:  Yes, your Honor.

16          THE COURT:  Great.  Unless and until I say otherwise,

17   presume that that is a telephone conference.  If it makes sense

18   to convert it to an in-person conference as we did today or as

19   I did today, I will let you know.  But bottom line is you

20   should plan to appear at that time and plan to discuss whatever

21   discovery remains, including schedule for expert discovery and

22   also the logistics, timing of a bench trial.

23          That I think covers everything that I would want to

24   discuss today.  Would normally ask about settlement.  Both

25   parties' letters seem to indicate that there was nothing to be

O5LJCHEC

1    done on that front now, so I'm not sure there's anything so

2    discuss.  I will say that this strikes me as a case where if

3    you were to engage in alternative dispute resolution that

4    private mediation might make the most sense here.  Even if now

5    is not the time to do it, given the expedited nature of the

6    litigation, I would encourage you to talk about that option,

7    and even if it's just to preliminarily agree on who a

8    third-party mediator might be and line that person up.

9              I will tell you that I may require you to give it a

10   shot before you actually go to trial.  And given, again, the

11   expedited nature of this or the extent to which we want to

12   stick with an expedited schedule, teeing that up sooner rather

13   than later so you can do it in the event that you're required

14   to do it or agree it would be advisable would probably make

15   sense.  Happy to discuss that further, but take it that it

16   might be premature, Ms. Whang?

17             MS. WHANG:  Yes, I think it's premature, your Honor.

18   And I will also mention the parties had engaged in a mediation

19   prior to the filing of the complaint.

20             THE COURT:  Understood.  Although I think that was

21   last year, if I remember correctly.

22             Ms. Sherman, anything to say on that front?

23             MS. SHERMAN:  No, your Honor.

24             We're certainly open to mediation.  But at this point,

25   I don't think anything has changed from where we were last

O5LJCHEC

1    year.  And so perhaps following additional rulings and

2    discovery, the parties may be in a different position.

3            THE COURT:  All right.  And I guess the last thing

4    I'll say is, assuming plaintiff does file an amended complaint

5    this week and based on our conversation, I'm guessing there

6    will be an amended complaint, I think my prior order had set a

7    deadline for any new motion to dismiss.  I would encourage you,

8    Ms. Sherman, to talk to one another and perhaps agree on a more

9    expedited briefing schedule for that.  I can't guarantee I will

10   expedite a ruling, but I will do my best.

11           Bottom line is if you think the decision on that

12   motion has significant bearing on discovery, which sounds like

13   defendants do think, and even if plaintiff doesn't, then it

14   might be in your interest to speed that along.  And so if you

15   can shave a couple weeks off the briefing schedule, that might

16   facilitate getting you a ruling sooner rather than later.  So

17   unless and until I say otherwise, the deadline is what it

18   currently is.  But if you think that in light of what I just

19   said it might make sense to expedite that process, I would

20   encourage you to talk to one another and submit a letter motion

21   to me proposing a modification to the schedule.

22           All right.  Anything else from either side, Ms. Whang?

23           MS. WHANG:  No, your Honor.  Thank you.

24           THE COURT:  Ms. Sherman?

25           MS. SHERMAN:  No, your Honor.  Thank you.

O5LJCHEC

1          THE COURT:  All right.  Thank you for coming in.  And

2     with that, we are adjourned.

3          I'll docket the case management plan later today.

4     Thank you very much.

5          (Adjourned)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25