UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHEMIMAGE CORPORATION,

*Plaintiff,*

v.

JOHNSON & JOHNSON and ETHICON, INC.,

*Defendants.*

Civil Action No. 1:24-cv-2646 (JMF)

**REPLY IN FURTHER SUPPORT OF DEFENDANTS'**
**<u>PARTIAL MOTION TO DISMISS</u>**

PATTERSON BELKNAP WEBB & TYLER LLP

William F. Cavanaugh, Jr.
Rachel B. Sherman
Christopher Wilds
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
Fax: (212) 336-2222

*Attorneys for Defendants*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................ 2

I. CHEMIMAGE DISREGARDS THE PLEADING STANDARD ................................... 2

II. CHEMIMAGE'S DAMAGES CLAIM FAILS ............................................................... 2

    A. ChemImage Has No Claim for Damages Beyond the Termination Fee ................. 2

    B. ChemImage's Claimed Damages are Not "Direct Damages" ................................ 4

III. CHEMIMAGE FAILS TO SHOW THAT J&J INTENDED TO BE BOUND BY THE AGREEMENT ........................................................................................................ 7

IV. CHEMIMAGE FAILS TO SHOW THAT J&J TORTIOUSLY INTERFERED WITH THE AGREEMENT ............................................................................................... 9

    A. ChemImage's Tortious Interference Claim Fails as Duplicative ............................ 9

    B. ChemImage Fails to Plead Malice or Causation ................................................... 10

CONCLUSION ........................................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*AP Links, LLC v. Russ*,
  No. 09-CV-5437, 2017 WL 3394599 (E.D.N.Y. Aug. 7, 2017) ..............................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..........................................................................................................2

*Bitterman v. Gluck*,
  9 N.Y.S.2d 1007 (1st Dep't 1939) ....................................................................................4

*Ciamara Corp. v. Widealab, Inc.*,
  No. 13-CV-1142, 2013 WL 6331927 (S.D.N.Y. Dec. 5, 2013) ........................................6

*Dormitory Auth. of N.Y. v. Samson Constr. Co.*,
  94 N.E.3d 456 (2018) ......................................................................................................9

*ESI, Inc. v. Coastal Corp.*,
  61 F. Supp. 2d 35 (S.D.N.Y. 1999) ..................................................................................8

*Galli v. Metz*,
  973 F.2d 145 (2d Cir. 1992) .............................................................................................5

*Gene Codes Forensics, Inc. v. City of New York*,
  No. 10-CV-1641, 2012 WL 1506166 (S.D.N.Y. Apr. 26, 2012) .....................................2

*Goodstein Constr. Corp. v. City of New York*,
  604 N.E.2d 1356 (1992) ..................................................................................................7

*IKB Int'l, S.A. v. Wells Fargo Bank, N.A.*,
  40 N.Y.3d 277 (N.Y. 2023) .............................................................................................9

*Indu Craft, Inc. v. Bank of Baroda*,
  47 F.3d 490 (2d Cir. 1995) ..............................................................................................7

*Joan Hansen & Co. v. Everlast World's Boxing Headquarters Corp.*,
  744 N.Y.S.2d 384 (1st Dep't 2002) .................................................................................6

*Kargo, Inc. v. Pegaso PCS, S.A. de C.V.*,
  2008 WL 2930546 (S.D.N.Y. July 29, 2008) ................................................................10

*In re Lipper Holdings, LLC*
  766 N.Y.S.2d 561 (1st Dept. 2003) .................................................................................7

*Luver Plumbing & Heating, Inc. v. Mo's Plumbing & Heating*,
 43 N.Y.S.3d 267 (1st Dep't 2016) ...................................................................................... 5

*Maricultura Del Norte, S. de R.L. de C.V. v. Umami Sustainable Seafood, Inc.*,
 769 F. App'x 44 (2d Cir. 2019) ........................................................................................... 9

*Matusovsky v. Merrill Lynch*,
 186 F. Supp. 2d 397 (S.D.N.Y. 2002) .................................................................................. 8

*MCK Bldg. Assocs., Inc. v. St. Lawrence Univ.*,
 754 N.Y.S.2d 397 (3d Dep't 2003) ...................................................................................... 3

*Millgard Corp. v. E.E. Cruz/NAB/Frontier-Kemper*,
 329 F. App'x 307 (2d Cir. 2009) ...................................................................................... 3, 4

*MMG Grp., Inc. v. Planned Mgmt. Constr. Corp.*,
 741 N.Y.S.2d 879 (1st Dep't 2002) ...................................................................................... 3

*Peter J. Solomon Co., L.P. v. Oneida Ltd.*,
 No. 09-CV-2229, 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010) ........................................... 6

*Rodolitz v. Neptune Paper Prods., Inc.*,
 239 N.E.2d 628 (1968) ........................................................................................................ 6

*Royal Indem. Co. v. Wyckoff Heights Hosp.*,
 953 F. Supp. 460 (E.D.N.Y. 1996) ...................................................................................... 6

*RSM Prod. Corp. v. Fridman*,
 643 F. Supp. 2d 382 (S.D.N.Y. 2009) ................................................................................ 10

*S & S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.*,
 489 N.Y.S.2d 478 (1st Dep't 1985) ................................................................................ 9, 10

*Schwartz v. Fortune Mag.*,
 89 F. Supp. 2d 429 (S.D.N.Y. 1999) .................................................................................... 3

*TNT USA Inc. v. DHL Express (USA), Inc.*,
 No. 09-CV-0481, 2012 WL 601452 (E.D.N.Y. Feb. 23, 2012) ....................................... 2, 4

*TransformaCon, Inc. v. Vista Equity Partners, Inc.*,
 No. 15-CV-3371 (SAS), 2015 WL 4461769 (S.D.N.Y. July 21, 2015) .............................. 8

*Variblend Dual Dispensing Sys. LLC v. Crystal Int'l (Grp.) Inc.*,
 No. 18-CV-10758, 2021 WL 1198834 (S.D.N.Y. Mar. 30, 2021) .................................... 10

*Watermelons Plus, Inc. v. New York City Department of Education*,
 908 N.Y.S.2d 80 (2d Dep't 2010) ........................................................................................ 4

*Watson v. Russell*,
    44 N.E. 161 (1896)...........................................................................................................4

*World Wide Packaging, LLC v. Cargo Cosms., LLC*,
    144 N.Y.S.3d 41 (1st Dep't 2021) ..................................................................................8

**PRELIMINARY STATEMENT**

ChemImage's Opposition ("Opp. Br.") demonstrates that its billion-dollar damages claim should be dismissed. ChemImage acknowledges that the parties' Agreement[1] entitles Ethicon to terminate the contract "without cause" upon 120 days' notice and payment of $40 million. And ChemImage concedes that when, as here, "a contract is terminable for convenience," New York law "***limit[s] damages to [the] notice period***." Opp. Br. at 24 (emphasis added). ChemImage does not claim that it could have earned ***any*** Development Payments, Milestone Payments or Patent Royalties during the 120-day period following Ethicon's March 2023 termination. Thus, ChemImage's only potential claim is for the $40 million termination fee to which it would be entitled if Ethicon's "for cause" termination was improper.

ChemImage's efforts to avoid this unambiguous language in the Agreement fail. The only plausible interpretation of the limitation of liability provision's reference to "direct damages" is to allow recovery of payments ChemImage had ***actually earned***, and that Ethicon was thereby contractually obligated to pay. Nothing in the Agreement suggests the parties intended to allow ChemImage to recover amounts it ***had not earned***, particularly where, as here, the parties had negotiated a significant termination fee that would apply if Ethicon terminated without cause. The only expectation damages for the alleged breach is a payment of the termination fee for a termination "without cause." *See* Am. Compl. ¶¶ 148-49.

ChemImage's Opposition also highlights the deficiencies of its claims against J&J. ChemImage ignores its own admissions and the documents incorporated by reference and continues to insist (falsely) that J&J employees negotiated and performed the Agreement. Even accepting these unfounded allegations as true, ChemImage fails to plead facts showing that some

---

[1] Defined terms used herein shall have the meanings ascribed to them in Defendants' opening brief. Dkt. 42. Citations to "Agreement" are to Ex. 1 to the Amended Complaint. *See* Dkt. 36-1.

limited involvement by J&J employees in a contract between its subsidiary and ChemImage indicates an intent to contractually bind J&J.  Likewise, ChemImage's Opposition confirms that its tortious interference claim is impermissibly duplicative of its contract claim and that it has not plead facts plausibly showing that J&J acted wrongfully or caused Ethicon to breach the Agreement.  Its claims against J&J should be dismissed.

## ARGUMENT

### I.     CHEMIMAGE DISREGARDS THE PLEADING STANDARD

The governing pleading standard requires ChemImage to assert sufficient facts to state a claim "***that is plausible on its face***."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (citations omitted).  While ChemImage's factual assertions must be accepted as true for purposes of this Motion, the Court need not accept as true allegations that are "[m]ere conclusions of law or unwarranted deductions of fact" or that "are flatly contradicted by documentary evidence."  *Gene Codes Forensics, Inc. v. City of New York*, No. 10-CV-1641, 2012 WL 1506166, at *3 (S.D.N.Y. Apr. 26, 2012) (quotations omitted) (citations omitted).

### II.    CHEMIMAGE'S DAMAGES CLAIM FAILS

Defendants demonstrated in their moving papers ("Br.") that ChemImage's claim for billions of dollars in damages fails.  ChemImage's arguments in opposition each fail.

#### A.     ChemImage Has No Claim for Damages Beyond the Termination Fee

The Agreement's termination fee of $40 million is a "cap" on damages for ChemImage's claims.  ChemImage does not dispute that under New York law, "where a contract permits a party to terminate upon notice, and a party *fails* to provide the required notice, contract damages are ***limited to the notice period***."  *TNT USA Inc. v. DHL Express (USA), Inc.*, No. 09-CV-0481, 2012 WL 601452, at *7 (E.D.N.Y. Feb. 23, 2012) (emphasis added) (quotations omitted); Opp. Br. at 24.  This is the essence of ChemImage's claim: that Ethicon purportedly failed to provide

2

the requisite notice to terminate for convenience. Thus, ChemImage could recover sums beyond the $40 million termination fee *if it could show that it would have earned additional payments before the end of the notice period*. *See* Br. at 16. But ChemImage does not allege that it could have earned any payments during the 120 days following Ethicon's termination. *See generally* Am. Compl. As a result, and as a matter of law, ChemImage's potential recovery is limited to $40 million. *See Millgard Corp. v. E.E. Cruz/NAB/Frontier-Kemper*, 329 F. App'x 307, 310 (2d Cir. 2009) ("[Plaintiff] is entitled to lost profits measured from the time of contract up to the time when it would have been terminated for convenience.") (quotations omitted) .

In an attempt to avoid this conclusion, ChemImage argues that the Court should not limit its damages to the notice period because Ethicon's "for cause" termination was allegedly pretextual. Opp. Br. at 21-22. But this argument ignores the fact that Ethicon was entitled to terminate "without cause" and its purportedly pretextual termination "amount[s] to a termination without cause." Am. Compl. ¶¶ 148-49 (emphasis omitted). In any event, ChemImage cites no authority to support its position and New York law is clear that "where . . . a contract has been [wrongfully] terminated prior to completion, quantum meruit is the appropriate measure of damages." *MCK Bldg. Assocs., Inc. v. St. Lawrence Univ.*, 754 N.Y.S.2d 397, 399 (3d Dep't 2003). Therefore, even if Ethicon's termination "for cause" is deemed wrongful, ChemImage's potential recovery is limited to the "value of the work performed," not the full value of the contract had it never terminated. *MMG Grp., Inc. v. Planned Mgmt. Constr. Corp.*, 741 N.Y.S.2d 879, 879 (1st Dep't 2002). New York law does not distinguish between types of "wrongful" terminations, whether "pretextual" or otherwise.

Ethicon's failure to provide notice of termination "without cause" does not entitle ChemImage to damages beyond the notice period. *See* Br. at 15 (citing cases); *see also Schwartz*

3

*v. Fortune Mag.*, 89 F. Supp. 2d 429, 434 (S.D.N.Y. 1999) (expectancy damages limited to thirty-day pretermination notice period). ChemImage's attempt to distinguish its claim here from the cases cited by Defendants fails. ChemImage argues that *TNT* and *Millgard* are inapposite because Ethicon's right to terminate for convenience was conditioned upon payment of a termination fee. Opp. Br. at 24 & n.7. But that distinction makes no difference because Ethicon—like the parties in those cases—had an "unconditional right to terminate the Agreement without cause." *TNT*, 2012 WL 601452, at *7. And ChemImage's quibble with *Watermelons Plus, Inc. v. New York City Department of Education*, 908 N.Y.S.2d 80 (2d Dep't 2010) similarly fails because the court in that case focused on identifying the event that "caus[ed] [the contract's] effective termination" for the purposes of calculating notice-period damages, not on which party triggered the termination. *Id.* at 81; Opp. Br. at 24. Lastly, ChemImage's attempt to distinguish *Bitterman v. Gluck*, 9 N.Y.S.2d 1007 (1st Dep't 1939) and *Watson v. Russell*, 44 N.E. 161 (1896) on the grounds that they involve employment contracts similarly fails. Opp. Br. at 24. As the court in *TNT* explained, "[t]his [notice-period] rule is not limited—either textually or logically—to the employment law context." *TNT*, 2012 WL 601452, at *8. Here, as with the *TNT* plaintiff, ChemImage "has not provided a persuasive reason to depart from [the rule]." *Id.*

   **B.**  **ChemImage's Claimed Damages are Not "Direct Damages"**

  There is no dispute that Section 8.4 of the Agreement bars lost profits and indirect damages from being recovered by *either* party. Agreement ¶ 8.4. Nothing in the Agreement suggests that a provision intended to limit liability somehow opened the door to ChemImage seeking billions of dollars in Milestone Payments and Patent Royalties that it might have earned had the Agreement continued, in direct contravention of settled New York law that limits ChemImage's contract damages to the notice period. *See* Opp. Br. at 17-21.

  ChemImage's reading of Section 8.4 violates basic principles of contract interpretation.

4

"Under New York law an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible." *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) (internal quotations and citation omitted). Here, ChemImage's construction of Section 8.4 upends the entire provision. While that provision expressly precludes **both** parties from recovering lost profits, under ChemImage's view, Ethicon would effectively be the only party unable to recover such damages. ChemImage's reading, which carves out all possible Milestone Payments and Patent Royalties as "direct damages" regardless of whether they were earned or not, would permit ChemImage to recover the entire category of "lost profits" that Section 8.4 expressly precludes, leaving the prohibition on such damages to apply, in effect, only to Ethicon. "[C]onstruction of a contract that would give one party an unfair and unreasonable advantage over the other . . . should, if at all possible, be avoided." *Luver Plumbing & Heating, Inc. v. Mo's Plumbing & Heating*, 43 N.Y.S.3d 267, 269 (1st Dep't 2016) (citation omitted).

    ChemImage's interpretation is also inconsistent with the Agreement's clear provisions allowing Ethicon to terminate the Agreement without cause. Those provisions entitle Ethicon to terminate the Agreement "without cause" (1) prior to regulatory approval upon 120 days' notice and payment of $40 million or (2) after 36 months of commercialization upon 180 days' notice and payment of the greater of $40 million or "the greatest amount of total Patent Royalties paid to [ChemImage]" during a 12-month period. Agreement ¶¶ 10.4.1, 10.4.2. These "fiercely negotiated" provisions, Am. Compl. ¶ 121, provided assurance to both parties as to the exact amount ChemImage would receive were Ethicon to terminate without cause. Yet, ChemImage's reading of the last sentence of Section 8.4 would effectively delete these provisions from the Agreement. Indeed, these provisions show that neither party contemplated that ChemImage

5

could seek future speculative damages.[2]

In an effort to save its claim, ChemImage ignores the plain text and effectively reads Section 8.4 to render "***lost [opportunities to earn*** ] Development Payments, Milestone Payments or Patent Royalties" recoverable as direct damages. Opp. Br. at 19-20. However, "a court may not, under the guise of interpretation, make a new contract for the parties or change the words of a written contract . . . if to do so would contradict the clearly expressed language of the contract." *Rodolitz v. Neptune Paper Prods., Inc.*, 239 N.E.2d 628, 630-31 (1968). If the parties intended to carve out "opportunities" to collect billions of dollars in payments as direct damages, they could have easily done so, especially given that the parties "carefully crafted" this provision. Opp. Br. at 18; *see Peter J. Solomon Co., L.P. v. Oneida Ltd.*, No. 09-CV-2229, 2010 WL 234827, at *4 (S.D.N.Y. Jan. 22, 2010) (the parties "would have so provided explicitly" if they intended plaintiff to receive fees for transactions after notice of termination). The parties did no such thing, and the Court should not accept ChemImage's invitation to rewrite the Agreement.

ChemImage also misinterprets the terms "payable" and "lost" in Section 8.4 as referring to "an amount 'that is to be paid.'" Opp. Br. at 20-21 (citations omitted). The term "payable hereunder" means payments that are "enforceably due or obligated, but not yet actually remitted." *Royal Indem. Co. v. Wyckoff Heights Hosp.*, 953 F. Supp. 460, 466 (E.D.N.Y. 1996). That is unquestionably not what ChemImage is seeking here. ChemImage does not allege it

---

[2] The billions of dollars ChemImage seeks to recover are no less speculative simply because certain of the possible payments are "defined term[s] with a prescribed dollar value." Opp. Br. at 19. No provision in the Agreement suggests that Ethicon contemplated it was undertaking a contractual duty to pay billions of dollars ***even if ChemImage did not provide the bargained for performance***. *See Joan Hansen & Co. v. Everlast World's Boxing Headquarters Corp.*, 744 N.Y.S.2d 384, 384, 107 (1st Dep't 2002) (contract did not provide for lost profits and the "magnitude of the damages" was "out of proportion to any liability contemplated by the contract"). ChemImage's claims for Patent Royalties are particularly speculative. ChemImage would not have earned any royalties under the Agreement unless and until its technology was functional, clinically proven, approved by regulatory authorities, and commercialized. And the Agreement itself is silent as to projections regarding expected sales. *See Ciamara Corp. v. Widealab, Inc.*, No. 13-CV-1142, 2013 WL 6331927, at *5 (S.D.N.Y. Dec. 5, 2013) (Furman, J.) (dismissing improper damages claim where the parties' contract only included volume "targets" but not agreement on "how many units the parties jointly anticipate will be sold").

achieved any milestones or that there were commercial sales for which it is owed money that Ethicon has not paid.  Opp. Br. at 21.  *See e.g.*, Agreement, at 7 ("'Milestone Payments' shall mean the payments by [Ethicon] to [ChemImage] ***upon the occurrence of the Milestones***.") (emphasis added).  Rather, the claims here are for events that never happened.

"A contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties."  *In re Lipper Holdings, LLC* 766 N.Y.S.2d 561, 562 (1st Dept. 2003) (citations omitted).  It would be patently unreasonable for the parties to negotiate a $40 million fee for termination without cause and an express limitation of liability provision if they intended to allow ChemImage to recover billions of dollars in payments for unearned milestones and royalties for unsold products.[3]  *See Goodstein Constr. Corp. v. City of New York*, 604 N.E.2d 1356, 1361-62 (1992) (rejecting plaintiff's lost profits claim of $800 million, "based on the hypothesized successful completion" of work that it would never have to complete).  Damages for breach of contract should not create windfall recoveries.  *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 495 (2d Cir. 1995).

The only plausible reading of the Limitation of Liability provision that is consistent with New York law, harmonizes all the terms of the Agreement, and avoids an absurd result is that only payments ChemImage had already earned qualify as direct damages.

### III.   CHEMIMAGE FAILS TO SHOW THAT J&J INTENDED TO BE BOUND BY THE AGREEMENT

ChemImage does not dispute that J&J is not a signatory to the Agreement and its Opposition simply ignores that the contract and its own report show that the "J&J" employees it

---

[3] Since Ethicon could terminate the Agreement upon 30-, 120- or 180-days' notice, *see* Agreement ¶¶ 10.3.1, 10.4.1, 10.4.2, it is conceivable that ChemImage might earn additional Milestone Payments or Patent Royalties during the notice period.  And given that Ethicon's payment to ChemImage might not be due until ***after*** the termination was effective, it makes commercial sense that the parties would seek to clarify ChemImage could recover these ***earned*** but "lost" payments as "direct damages" rather than have them barred under the first clause of Section 8.4.

alleges were involved were, in fact, Ethicon personnel. *Compare* Opp. Br. at 10 to Final Report Personnel at 2. Where, a plaintiff's allegations are contradicted by a document incorporated in its Complaint, as they are here, "those allegations are insufficient to defeat a motion to dismiss." *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002).

But even if some J&J employees participated in the project as ChemImage alleges, Opp. Br. at 10; Am. Compl. ¶ 55 (alleging that its technology was presented to J&J executives and Peter Shen was involved in negotiations), such tangential involvement by a parent company is insufficient to show that J&J manifested an unequivocal intent to be bound by the Agreement. *See World Wide Packaging, LLC v. Cargo Cosms., LLC*, 144 N.Y.S.3d 41, 41-42 (1st Dep't 2021) (non-signatory did not manifest an intent to be bound because it did not "directly participate[] or micro-manage[] *each* transaction" in business relationship) (emphasis added).[4]

The cases cited by ChemImage do not hold otherwise because ChemImage does not (and cannot) plausibly allege that Ethicon acted under J&J's control or that J&J assumed Ethicon's obligations under the Agreement. *See TransformaCon, Inc. v. Vista Equity Partners, Inc.*, No. 15-CV-3371 (SAS), 2015 WL 4461769 at *5 (S.D.N.Y. July 21, 2015) (non-signatory parent manifested an intent to be bound by the contract because its "[subsidiary] agreed to the contract under [the parent's] watch and control."); *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 73-74 (S.D.N.Y. 1999) (non-signatory parent could be liable because documents showed that the non-signatory accepted and assumed the obligations of the contract). No such facts are alleged here. Rather, ChemImage concedes that Ethicon representatives performed its obligations under the Agreement. *See* Am. Compl. ¶ 55; *see also* Final Report Personnel at 2 (listing 18 individuals from Ethicon and none from J&J as Key Personnel).

---

[4] Neither has J&J manifested an intent to be bound to the Agreement simply because an unpublished press release **drafted by ChemImage** states that ChemImage "partnered 'with Johnson & Johnson.'" Opp. Br. at 9.

8

ChemImage has not plausibly alleged that J&J manifested an intent to be bound.

### IV. CHEMIMAGE FAILS TO SHOW THAT J&J TORTIOUSLY INTERFERED WITH THE AGREEMENT

#### A. ChemImage's Tortious Interference Claim Fails as Duplicative

"New York law does not permit the same conduct to be assigned as both a breach of contract and a tort." *Maricultura Del Norte, S. de R.L. de C.V. v. Umami Sustainable Seafood, Inc.*, 769 F. App'x 44, 55 (2d Cir. 2019) (citation omitted). Here, J&J's alleged breach of supposed duties to (1) "not to interfere with the contractual relationship between ChemImage and Ethicon" and (2) "jointly develop and commercialize the technology" arise from the same theory and same set of facts: that Ethicon purportedly breached its contract by wrongfully terminating the Agreement. Opp. Br. at 14-15. ChemImage cites *S & S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.*, 489 N.Y.S.2d 478 (1st Dep't 1985) and argues that it has alleged that J&J breached a separate duty from its alleged breach. But in *S & S Hotel*, the Court distinguished the defendant's breach of its duty not to interfere with the plaintiff's contracts *with third parties* from the defendant's breach of its contract *with the plaintiff*. *Id.* at 480-81. Here, ChemImage alleges J&J interfered with and breached the same Agreement. Opp. Br. at 13.

Moreover, there is no distinction between the damages ChemImage alleges in connection with J&J's alleged tortious interference and those stemming from Ethicon's alleged breach. For both claims, ChemImage seeks "lost Development Milestone Payments, Regulatory Milestone Payments, and Patent Royalties." Am. Compl. ¶¶ 135, 159. "Where '[t]he only damages alleged under either theory of recovery' are 'identical for both claims,' . . . the noncontractual claim[] must be dismissed as duplicative." *IKB Int'l, S.A. v. Wells Fargo Bank, N.A.*, 40 N.Y.3d 277, 292 (N.Y. 2023) (quoting *Dormitory Auth. of N.Y. v. Samson Constr. Co.*, 94 N.E.3d 456, 462 (2018)). ChemImage adds a vague demand for "lost" business opportunities in connection with

9

its tortious interference claim, but these damages are not recoverable. Opp. Br. at 14. Damages for tortious interference with contract must arise from interference **with the operative agreement**, not with prospective business relationships with undisclosed third parties. *See e.g.*, *AP Links, LLC v. Russ*, No. 09-CV-5437, 2017 WL 3394599, at *8 (E.D.N.Y. Aug. 7, 2017) (identifying "the pecuniary loss of the benefits of the contract" as an appropriate measure of damages for tortious interference) (quotations omitted) (citations omitted).[5]

### B.   ChemImage Fails to Plead Malice or Causation

ChemImage does not allege any facts indicating that J&J ever ordered Ethicon to terminate the Agreement or explain how "hamstringing the JSC" would have enabled a "pretextual" for-cause termination. Opp. Br. at 14-16; *see Kargo, Inc. v. Pegaso PCS, S.A. de C.V.*, 2008 WL 2930546, at *10 (S.D.N.Y. July 29, 2008) (dismissing tortious interference claim based on conclusory allegations). ChemImage also misstates the standard for tortious interference, ignoring that a parent "ha[s] a [] right to be involved in [its subsidiary's] business decisions" to protect *both* the parent's interests *and* those of its subsidiary when, as here, there is no allegation of malice or acting against its own economic interest. *Kargo, Inc.*, 2008 WL 2930546, at *10. Finally, ChemImage fails to address the causation prong of the inquiry. Conclusory allegations that J&J precluded ChemImage from realizing "lost opportunities" lack sufficient "factual specificity" to survive a motion to dismiss. *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 405 (S.D.N.Y. 2009); Opp. Br. at 14. Its claim should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss.

---

[5] ChemImage also fails to plead any facts to substantiate its claim that any prospective business opportunity was lost. *S & S Hotel Ventures*, 489 N.Y.S.2d at 479-80; *Variblend Dual Dispensing Sys. LLC v. Crystal Int'l (Grp.) Inc.*, No. 18-CV-10758, 2021 WL 1198834, at **6-9 (S.D.N.Y. Mar. 30, 2021) (dismissing claims seeking "lost royalty payments and lost business opportunities" where plaintiff did not "show that [alternative] business opportunit[ies] actually existed"); Opp. Br. at 14, 17.

|  |  | Respectfully submitted, |
|---|---|---|
| Dated: | New York, New York<br>June 25, 2024 | */s/ Rachel B. Sherman*<br>William F. Cavanaugh, Jr.<br>Rachel B. Sherman<br>Christopher Wilds<br>PATTERSON BELKNAP WEBB & TYLER LLP<br>1133 Avenue of the Americas<br>New York, New York 10036<br>Telephone: (212) 336-2000<br>Fax: (212) 336-2222<br>wfcavanaugh@pbwt.com<br>rsherman@pbwt.com<br>cwilds@pbwt.com<br><br>*Counsel for Defendants* |

11