quinn emanuel trial lawyers | new york
51 Madison Avenue, 22nd Floor, New York, NY 10010 | TEL (212)-849-7000

WRITER'S DIAL NO.
(212) 849-7375

WRITER'S EMAIL ADDRESS
courtneywhang@quinnemanuel.com

September 11, 2024

Hon. Jesse M. Furman
United States District Court
40 Centre Street, Room 2202
New York, NY 10007

Re: *ChemImage Corp. v. Johnson & Johnson et al.*, No. 1:24-CV-2646 (JMF)

Dear Judge Furman:

We write on behalf of Plaintiff ChemImage Corporation ("ChemImage") in the above-referenced matter, pursuant to paragraph 3.E of Your Honor's Individual Rules, with a significant development that warrants an order compelling Johnson & Johnson ("J&J") to add Alex Gorsky, Ashley McEvoy, and Peter Shen as custodians for all document requests.[1] A recent trial Memorandum and Order from the Delaware Chancery Court disproves J&J's numerous statements to ChemImage and the Court that these custodians were "not involved in the events at issue." Dkt. 50, at 1.[2]

On September 4, 2024, Vice Chancellor Will issued a post-trial opinion in *Fortis Advisors LLC v. Johnson & Johnson, Ethicon Inc., Alex Gorsky, Ashley McEvoy, and Peter Shen*. In 2019, J&J and Ethicon entered into an agreement with Auris to develop a surgical robot. Ex. A, Order at 37. J&J "touted how ChemImage would serve a complementary role alongside Auris." Dkt. 36 ¶ 38 ("Am. Compl."). After a ten day trial, the court found that "J&J's promise to Auris was broken almost immediately after closing." Ex. A, Order at 2. And, like here, "J&J's robotics budget left no room for [J&J's in-house technology] and [Auris' technology] to be developed in parallel." *Id.* J&J refused to pay the milestones and Auris "effectively became a parts shop for [J&J]." *Id.* at 3.

In *Fortis*, the court awarded the Auris shareholders $1 billion in damages, finding that J&J breached its contractual obligations, violated the implied covenant of good faith and fair dealing, and committed fraud. *Id.* at 5. Just as ChemImage alleges here, the *Fortis* court found that "J&J

---

[1] ChemImage previously moved to compel the addition of these three custodians on a single RFP. *See* Dkt. 59. Following a hearing on the matter, J&J consented to search custodial files for that RFP only. *See* Dkt. 72. ChemImage now seeks broader relief.

[2] Two days after the *Fortis* decision, ChemImage requested that J&J add these custodians. After **three** requests for a conferral, J&J finally agreed to confer five days later, on September 11, refusing to add the custodians.

quinn emanuel urquhart & sullivan, llp
ATLANTA | AUSTIN | BOSTON | BRUSSELS | CHICAGO | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

blames the missed milestones on [Auris'] technical problems. This defense is dubious; it was concocted after J&J was sued." *Id.* at 4. Likewise, the court found that "J&J viewed the resulting delays as beneficial since it could avoid making the earnout payment." *Id.* at 3.

Specifically, VC Will found that named-defendants Alex Gorsky and Ashley McEvoy "led from the top" on J&J's surgical robotics strategy, *i.e.*, the same division that housed ChemImage's technology. *Id.* at 26. Ashley McEvoy "reported directly to Gorsky" and personally "decided that the total robotics budget . . . would be capped at $500-600 million per year. This budget cap would later be called the '***Ashley Management Decision***' or '***Ashley Challenge***.' At J&J, a 'management decision' is a ***top-down*** 'budget challenge' for a division." *Id.* at 19, 28 (emphasis added). Gorsky and McEvoy also deputized Peter Shen to conduct a "deep dive" into the robotics program, and report back to them. *Id.* at 20.

ChemImage alleges identical misconduct, involving the same individuals. J&J's tortious interference with the ChemImage agreement was driven by the ***same*** pressure created by the ***same*** J&J robotics strategy and budget. Specifically, ChemImage alleges that like Auris, "J&J and Ethicon's Agreement with ChemImage was a casualty of the same shift in J&J's corporate priorities." Am. Compl. ¶ 120. And "[l]ike here, J&J was panicked about a competitor landing the Auris technology (even though the project was sidelined), in what J&J executive Peter Shen referred to as a 'doomsday scenario.'" *Id.* ¶ 119. Documents in this case also confirm that the J&J executives had the same kind of involvement with ChemImage that they did with Auris, including that: (1) Shen participated in multiple "deep dives" of ChemImage's technology and oversaw achievement criteria for Milestones; (2) Gorsky and McEvoy personally received demos of the ChemImage technology and gave positive feedback; (3) McEvoy oversaw ChemImage's budget.

ChemImage also specifically alleged that Gorsky, McEvoy, and Shen were involved in overseeing the ChemImage Agreement. Am. Compl. ¶¶ 40-41. Thus, ChemImage asked J&J to agree to use these three custodians in discovery. J&J refused. In this litigation, J&J has made multiple statements to ChemImage—and this Court—that are now directly contradicted by the *Fortis* trial record. Specifically, J&J has represented that:

- "J&J ***was not involved in the events at issue*** … J&J personnel had minimal (if any) involvement in the project … Thus, personnel of J&J, the parent company, have no unique knowledge relevant to this dispute." (emphasis in original). Dkt. 50 at 1.

- "[S]everal of the individuals from whom it requests Defendants collect and search data (e.g., ***Alex Gorsky, Ashley McEvoy, Peter Shen***. . .) are not proper custodians, and ChemImage has not articulated a legitimate basis for entangling these high-ranking, former executives in this litigation. … ChemImage cannot unlock the doors of discovery by ***straining to tie these senior executives' knowledge of some nebulous "corporate strategy"*** to ChemImage's baseless and conclusory allegation that J&J directed Ethicon to terminate the Agreement." Ex. B, July 12, 2024 Letter from C. Wilds, at 1-2 (emphasis added).

The *Fortis* trial record, however, makes clear that Gorsky, McEvoy, and Shen led the "top down" robotics strategy that was the death knell to both Auris and ChemImage. Notably, the *Fortis* trial—which highlighted these facts—occurred months ***before*** this action was filed. Indeed, the same firm that represented J&J in *Fortis*, represents J&J here, including multiple overlapping

2

counsel. These facts were well-known to J&J, and its counsel, when it made these statements before this Court.

This is not the first time J&J has flouted its discovery obligations in this matter. After Defendants served "joint" initial disclosures on behalf of J&J and Ethicon—failing to list *any* J&J individual "likely to have discoverable information"—ChemImage moved to compel J&J to provide initial disclosures. Dkt. 48. These disclosures were critical to the negotiation of the discovery process that followed. ChemImage was prejudiced by not having *any* disclosures from J&J. The Court held that:

> "The motion is denied to the extent that it seeks to compel J&J to serve new initial disclosures (and relatedly to the extent that it seeks attorney's fees). As the cases upon which ChemImage relies make plain, where, as here, co-defendants provide initial disclosures together, courts presume that each defendant was consulted in the preparation of the disclosures. So too here. ***If it later turns out that J&J failed to include something in the initial disclosures that it should have, the Court can and will take all appropriate measures.*** But on the present record, there is no basis to award ChemImage the relief it seeks." Dkt. 51.

In light of these developments, ChemImage respectfully seeks an order compelling J&J to: (1) add the J&J executives as document custodians, and (2) produce any responsive documents by September 19. ChemImage also renews its motion for attorney's fees in connection with its motion to compel. ChemImage specifically alleged that "J&J's play to catch up in the surgical robotics space had failed, for reasons having nothing to do with ChemImage, and J&J tried to silently retreat from its earlier acquisitions. ***J&J underfunded Auris and eventually instructed Ethicon to abandon ChemImage pretextually***." Am. Compl. ¶ 7. Still, J&J doubled down on its claims that no J&J employees—including Gorsky, McEvoy, and Shen—were "involved in the events at issue." Dkt. 50, at 1. These statements were demonstrably false when made and J&J should have disclosed these individuals at the ***outset of discovery***, as required by Rule 26. Accordingly, this relief is warranted under Rule 37. *See Shanchun Yu v. Diguojiaoyu, Inc.*, No. 18-CV-7303 (JMF), 2019 WL 6174204 at *6 (S.D.N.Y. Nov. 20, 2019) citing *Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*, 273 F.R.D. 372, 377 (S.D.N.Y. 2011) ("Rule 37 provides that if a motion to compel is granted ... the court must award reasonable motion expenses incurred in making the motion.").[3]

Finally, with respect to timing: J&J, with its nearly $400 billion market cap, has sufficient resources to review and produce these documents by September 19, without compromising the October 10 fact discovery cutoff. ChemImage sincerely appreciates the Court's attention to this matter.

Respectfully submitted,
 /s/ Courtney C. Whang
Courtney C. Whang

---

[3] Time is also of the essence in ordering J&J to preserve and produce custodial information as the court in *Fortis* considered several spoliation motions on this issue and specifically found that Alex Gorsky "was negligent" in preserving relevant material. *See* Ex. A, Order at 73 n.389.