# Exhibit B



www.pbwt.com

July 12, 2024

Christopher Wilds
Counsel
(212) 336-2120
cwilds@pbwt.com

<u>By Email Attachment</u>

Courtney Whang, Esq.
Quinn Emanuel
51 Madison Ave.
New York, NY 10010
courtneywhang@quinnemanuel.com

Re:    ***ChemImage Corp. v. Johnson & Johnson et al.*, No. 1:24-CV-2646 (JMF)**

Dear Courtney:

We write to address discovery issues that remain unresolved after the parties' July 10 meet-and-confer and to correct ChemImage's numerous misstatements of the record in its July 10 email.

**A.    Custodians**

Defendants reject ChemImage's proposal for Defendants to run search terms on the data of 13 potential custodians—including several senior executives who were not involved in the day-to-day operations of Project Erie—and then report the findings to ChemImage so that ChemImage can determine whether it, in fact, wishes to propose those individuals as custodians. ChemImage is not entitled to hit reports simply for purposes of identifying potential custodians, and its attempt to obtain such information "amount[s] to a fishing expedition." *Emanuel v. Gap, Inc.*, 2020 WL 5995134, at *3 (S.D.N.Y. Oct. 9, 2020) (internal quotation omitted). ChemImage's proposal also contradicts the Agreement, which contemplates limited discovery of ESI and production requests targeted at specific issues and custodians. Agreement, App'x C. Requiring Defendants to collect, process and search data that will not be used in the litigation is time consuming, unnecessarily expensive and unduly burdensome to Defendants. However, Defendants remain willing to run search terms across the data of eight appropriate custodians of ChemImage's choosing.

Moreover, several of the individuals from whom it requests Defendants collect and search data (e.g., Alex Gorsky, Ashley McEvoy, Peter Shen, Vladimir Makatsaria, and Ahmet Tezel) are not proper custodians, and ChemImage has not articulated a legitimate basis for entangling these high-ranking, former executives in this litigation. First, these senior executives were not involved with Project Erie on a day-to-day basis, if at all. Indeed, ChemImage does not allege that any of these individuals signed the Agreement; served on the JSC or DRB; attended a

Courtney Whang
July 12, 2024
Page 2

single meeting related to the JSC, DRB, or the Final VAB Report; or directed Ethicon to terminate the Agreement.  Second, any relevant knowledge these executives might have regarding Project Erie derives from the Ethicon personnel who actively participated in Project Erie and are the proper custodians for this case.  *See Emanuel*, 2020 WL 5995134, at *3 (internal quotation omitted) ("Plaintiffs had failed to demonstrate that [the potential custodian]'s information was, A, unique, [or] B, directly relevant to any of the issues here . . . .").  Third, vague references to purported presentations of "ChemImage's technology and business plan" or participation in contract negotiations do not provide a basis for seeking discovery from these executives in a contract case that concerns ChemImage's material breaches and Ethicon's performance of the Agreement *after execution*.  Am. Compl. ¶¶ 40-41.  Any senior executive's tangential association with activities between the parties in the period leading up to signing is completely irrelevant to the issues on which this litigation hinges.  And ChemImage cannot unlock the doors of discovery by straining to tie these senior executives' knowledge of some nebulous "corporate strategy" to ChemImage's baseless and conclusory allegation that J&J directed Ethicon to terminate the Agreement.  *Id.* ¶ 84.  Defendants reject ChemImage's attempt to harass senior executives with unjustified discovery demands that are disproportionate to the needs of the case.

Contrary to ChemImage's mischaracterization of the parties' July 10 meet-and-confer, Defendants have interviewed potential custodians and satisfied their obligation to disclose the individuals "who [are] likely to have discoverable information and materials" about Project Erie based on "the facts on the ground."  Dkt. 51; *see* Defendants' Initial Disclosures at 3-4 (May 17, 2024).  Defendants maintain that the appropriate custodians in this matter are Ethicon personnel but, in any event, will look further into whether there is a basis for designating any J&J personnel as a document custodian.

### B. Plaintiff's Preservation of Relevant Data

ChemImage has yet to respond to Defendants' request for confirmation that it has preserved individual hard drives for each of the eight custodians that Defendants proposed and that ChemImage has now agreed to.  *See* July 8, 2024 Letter from C. Wilds to C. Whang at 3.  By Monday, July 15, please confirm that ChemImage has collected local hard drives for each of the eight ChemImage custodians Defendants have selected.

### C. Defendants' First Production of Documents and Plaintiff's Suggested Edits to the Draft Protective Order and ESI Protocol

As promised, Defendants will make their first production of documents from a non-custodial Ethicon SharePoint source later today.  Consistent with the undisputed portions of the draft ESI Protocol, which the parties agreed to abide by for upcoming productions, embedded objects will not be extracted for files produced in native format, but will be produced in accordance with the agreed-upon portions of the ESI protocol.  *See* Draft ESI Protocol, Attachment A, Section A.9.

Courtney Whang
July 12, 2024
Page 3

Additionally, Defendants reject ChemImage's proposal to format Bates numbers with a distinct prefix for each Party. As Defendants explained during the July 10 meet-and-confer, applying separate Bates prefixes for each party is impracticable, unnecessarily burdensome, and likely to cause confusion. As such, Defendants' first production will use the Bates prefix "DEF".

Defendants also reject ChemImage's proposal to grant Patrick Treado blanket access to discovery materials marked "Highly Confidential—Attorney Eyes Only" as he is not an attorney, he will undoubtedly serve as a key fact witness in this case, and his unfettered access to such materials may expose him to commercially sensitive or proprietary non-responsive information. However, Defendants are willing to consider Mr. Treado's need to review Highly Confidential discovery material on a case-by-case basis. Moreover, contrary to ChemImage's misstatement in its July 10 email, Defendants have not represented that any "technical material" will not be designated as Highly Confidential. Defendants have merely expressed an expectation that most documents related to ChemImage's technology will not be designated as Highly Confidential.

### D.    ChemImage Must Specifically Identify Documents Responsive to Defendants' RFP No. 2

Defendants' RFP No. 2 is narrowly tailored to the specific, discrete subset of data that underlies the Final VAB Report. Defendants need to understand what materials represent the complete set of data underlying ChemImage's Final VAB Report to properly assess ChemImage's claim that "[t]he Final Report demonstrated successful in-vivo demonstration with a prototype in VAB," Am. Compl. ¶ 99, and to avoid surprise at trial. Identifying this data is not unduly burdensome, and courts in this district have ordered the disclosure of a list of documents responsive to specific RFPs by Bates number on multiple occasions. *E.g.*, *Sure Fit Home Prods., LLC v. Maytex Mills Inc.*, 2022 WL 1616553, at *3 (S.D.N.Y. May 20, 2022); *Pugh-Ouza v. SpringHill Suites*, 2019 WL 13334786, at *10 (S.D.N.Y. Mar. 26, 2019). Please confirm by Monday, July 15, that Plaintiff will identify the complete set of data responsive to RFP No. 2 by Bates numbers once it has produced all such discovery.

### E.    ChemImage's Second Requests for Production

ChemImage served its second RFPs, including its request for organization charts, on Defendants on July 3. Thus, its demand for a response to those requests, let alone a production pursuant to those requests, is premature. Defendants will respond within the time period provided by the Federal Rules.

Sincerely,

    /s/ Christopher Wilds

Christopher Wilds