


www.pbwt.com

September 16, 2024

Rachel Sherman
Partner
(212) 336-2147
rsherman@pbwt.com

<u>By Electronic Case Filing</u>

Honorable Jesse M. Furman
United States District Court
40 Centre Street, Room 2202
New York, NY 10007

      **Re:**    ***ChemImage Corp. v. Johnson & Johnson et al.***, No. 1:24-CV-2646 (JMF)

Dear Judge Furman:

      ChemImage's last-minute attempt to seek extensive discovery from former senior executives at J&J who lack unique, relevant knowledge about the issues in this lawsuit should be denied. ChemImage offers no basis to tie these executives to the events at issue in this case and its reliance on an unrelated lawsuit involving different products, time periods, and facts does not suffice.

      This is a case about ChemImage's failure to demonstrate the feasibility of its imaging technology and its inability to meet an early-stage milestone. In December 2019, Ethicon and ChemImage entered into an agreement to develop ChemImage's visualization technology for healthcare applications. ChemImage claimed to possess advanced visualization software that could be combined with Ethicon surgical devices to enable surgeons to detect critical structures in the body during surgical procedures. Per the Agreement, ChemImage was wholly responsible for developing its software and conducting feasibility studies, while Ethicon provided funding and committed to providing eventual regulatory and commercial support. ChemImage struggled to perform from the outset and quickly fell behind. After receiving years of funding from Ethicon and being granted numerous extensions and modifications that should have made it easier for ChemImage to meet a milestone, ChemImage presented a final report in December 2022 that showed that ChemImage had engaged in improper data practices and that its technology had completely missed the mark. In March 2023, after thoroughly reviewing the final VAB report, Ethicon provided ChemImage with a notice of termination and an opportunity to cure. ChemImage made no attempts whatsoever to cure the errors in the VAB report, so Ethicon terminated the Agreement for cause.

      Unable to defend its technology or its data practices, ChemImage strains to tie the project to J&J's most senior executives and the company's surgical robotics program. ChemImage's attempt fails for several reasons. ***First***, J&J's former CEO, Alex Gorsky, and two other former senior executives, Ashley McEvoy and Peter Shen, were not involved in the decision to terminate the Agreement, nor did they participate in negotiations with ChemImage or oversee the feasibility studies that ChemImage conducted. ChemImage accuses Defendants of misrepresenting the facts about these senior executives' lack of involvement in this case, but the record confirms their lack of involvement. Defendants have already searched for and produced documents from Gorsky, McEvoy, and Shen within the six-month pre-contract negotiation period, based on ChemImage's allegations that these individuals were involved during that time period. This search yielded a single

Judge Furman | Page 2
September 16, 2024

email from Gorsky indicating his approval to execute the Agreement after it was negotiated, and a handful of documents showing that McEvoy and Shen were apprised of the deal. Moreover, of the nearly 90,000 documents Defendants have produced to date, including those from the post-execution period, there is the single email from Gorsky referenced above; a single email from McEvoy; and roughly 15 emails from Shen. None of these emails relates to the decision to terminate the Agreement and they instead concern other updates relating to the project. And of the more than 32,000 documents ChemImage has produced to date, there are zero communications with Gorsky or Shen, and a single email from ChemImage copying McEvoy after Ethicon's termination notice had already been sent. This confirms what Defendants have said all along: Gorsky, Shen, and McEvoy were apprised of the project at high-level but did not participate in negotiations with ChemImage; were not involved in the project day-to-day; and did not direct Ethicon to terminate the Agreement. In fact, neither Gorsky nor Shen was employed by J&J at the time of termination in March 2023, both having retired months earlier.

*Second*, ChemImage's software indisputably did not concern a robotic device and its applications were not intended to be limited to robotic surgery. Am. Compl. ¶ 37. Decisions relating to other products and other programs have no bearing on whether ChemImage met its contractual obligations with respect to its imaging technology. Indeed, the Court previously recognized that broad forays into J&J's surgical robotics division are not appropriate in this case. *See* Dkt 51 (denying ChemImage's request for documents "related to [J&J's] current and future strategic plans for its MedTech and/or surgical robotics division," as "disproportionate to the needs of the case.").

*Third*, ChemImage's request, just days before the substantial completion deadline, is also untimely and precluded by the parties' agreements and the Agreement itself. It should be denied.

**A. Gorsky, McEvoy, and Shen Are Not Proper Custodians**

Lacking a basis to show that these executives played a role in the events at issue in this case, ChemImage misleadingly stitches quotes from its own Amended Complaint together with the Delaware Chancery court's recent ruling in another lawsuit—one involving a completely different product sector, time period, and set of facts. J&J fundamentally disagrees with the *Fortis* court's contractual interpretations, a number of its factual findings, and ChemImage's mislabeling of the court's opinion as the "trial record." Even so, neither the underlying allegations nor the holding in *Fortis* justify the discovery sought here. In *Fortis*, the plaintiff alleged that, shortly after acquiring Auris robotic technology in early 2019, J&J conducted a "bake-off" between the Auris robotic system and another robotic system that J&J was developing in a joint venture, and that J&J later decided to combine the two robotic programs. The plaintiff alleged that J&J's conduct delayed progress on the Auris system and thereby breached J&J's obligations under the relevant merger agreement, and that J&J's actions were contrary to representations made to Auris during the contract negotiations. But ChemImage's technology is not a robot and nothing in *Fortis* has any bearing on the issues in this case, which relate to whether ChemImage fulfilled its *own* contractual obligations to develop imaging software that would have been used in a variety of Ethicon devices, had the technology actually worked. In fact, there is no reference in the *Fortis* decision to ChemImage or the technology that is at the heart of this dispute.

Judge Furman | Page 3
September 16, 2024

ChemImage's last-minute attempt to bootstrap *Fortis* to gain additional discovery lacks any basis in reality or common sense. Given the size of the Auris deal (potentially up to $5.75 billion) and the significance of the acquisition to J&J's robotics program, Gorsky, McEvoy, and Shen actively participated in negotiating the deal or were involved in later strategic decisions concerning the surgical robots at the heart of the *Fortis* litigation, and they were named as co-defendants. But their involvement in that deal or in J&J's robotics program in general has no bearing on their involvement in the deal with ChemImage—a much smaller external project concerning the development of non-robotic imaging technology. The Auris acquisition was worth billions of dollars and concerned an entire sector within J&J's MedTech business. Furthermore, J&J fully acquired Auris and oversaw the robotics program. In stark contrast, the ChemImage transaction involved a $7 million upfront payment and concerned non-robotic technology that ChemImage—not Ethicon or J&J—was independently responsible for developing and that might have been combined with Ethicon devices had the technology actually worked. *Fortis* also concerns events in 2018-2021, when Gorsky, McEvoy, and Shen were all still working at J&J, and in which Gorsky was "'fully engaged' **beyond his typical involvement with an investment** because of Auris's importance to J&J[]." *Fortis*, Dkt. 74-1 at 23 (emphasis added).

ChemImage seemingly understands this, repeatedly claiming without any evidence that Defendants falsely stated that Gorsky, McEvoy, and Shen were "not involved in the events at issue," yet failing to cite a single document or a single line in the *Fortis* decision suggesting a connection between the three senior executives and the technology at issue in this case. Dkt. 74. ChemImage points only to discussions in *Fortis* concerning the senior executives' involvement in "J&J's surgical robotics strategy"—a fact Defendants do not dispute—but strains to tie that involvement to **a case that is not about J&J's robotics program**. ChemImage cites only to its own complaint, which alleges that Gorsky, McEvoy, and Shen were involved in "overseeing negotiation and approval of the Agreement," and not in its performance or termination. *Id.*; Am. Compl. ¶ 41. ChemImage's unsupported allegations are insufficient and its accusations of misconduct are meritless.

**B.  ChemImage Abandoned Its Request for Gorsky, McEvoy, and Shen Months Ago**

ChemImage's attempt to capitalize on a case that has nothing to do with its technology should be seen for what it is: a blatant attempt to circumvent months of negotiations and agreements around discovery, all of which were centered on an agreed-upon number and identity of custodians. Months ago, ChemImage made and then abandoned a request for documents from Gorsky, McEvoy, and Shen, eventually recognizing that, unlike with Auris, the three executives were not close to "the facts on the ground" in this project, Dkt. 51, and had limited involvement at best during the pre-contract execution period. The parties reached agreement on eight custodians per side and ChemImage dropped its request for these three executives and selected three other custodians from J&J (including two senior executives). ChemImage was well aware of the *Fortis* litigation when it made this decision—in fact, it cited the post-trial submissions in its Amended Complaint. Relying on the eight-custodian limit, Defendants also agreed to apply broad search terms and add additional custodians for certain document requests, increasing the already significant disparity in the parties' discovery burdens and in spite of ChemImage's refusal to extend deadlines. In keeping with the Court's schedule and the Agreement's expedited litigation provision, Defendants substantially completed their production of documents by the September 12th deadline. The time for ChemImage to move to compel documents from additional custodians was months ago.

Judge Furman | Page 4
September 16, 2024

Respectfully submitted,

_/s/ Rachel B. Sherman_
Rachel B. Sherman

The Court agrees with Defendants that the Fortis decision provides no basis to add Alex Gorsky, Ashley McEvoy, and Peter Shen as document custodians in *this* case. Accordingly, Plaintiff's letter motion is DENIED substantially for the reasons set forth above.  The Clerk of Court is directed to terminate ECF No. 74.

SO ORDERED.

September 18, 2024