

www.pbwt.com

September 27, 2024

Rachel Sherman
Partner
(212) 336-2147
rsherman@pbwt.com

By Electronic Case Filing

Honorable Jesse M. Furman
United States District Court
40 Centre Street, Room 2202
New York, NY 10007

Re:   *ChemImage Corp. v. Johnson & Johnson et al.*, No. 1:24-CV-2646 (JMF)

Dear Judge Furman:

Defendants respectfully move pursuant to Federal Rule of Civil Procedure 26(c) for a protective order precluding ChemImage from deposing Johnson & Johnson's ("J&J") former Executive Vice President and Worldwide Chair of MedTech, Ashley McEvoy. Ms. McEvoy had no first-hand involvement in Ethicon's project with ChemImage and has no unique knowledge about the key issue in dispute: whether Ethicon properly terminated the contract for cause after ChemImage failed to meet an early-stage milestone. As the Court has already recognized, Ms. McEvoy was not close to "the facts on the ground" in this case. Dkt. Nos. 51, 83. Her deposition notice should be quashed.[1]

Ms. McEvoy is an "apex" witness. From 2018 to early 2024, she was responsible for overseeing the operation of various J&J companies that develop and sell medical technical products spanning areas such as orthopedics, surgery, interventional solutions, and vision care. J&J's MedTech companies include operating companies like Ethicon, DePuy Synthes, Biosense Webster, and Cerenovus, each of which research, develop, and market multiple lines of products, devices, and technologies in their respective areas and collaborate with a significant number of external partners to develop new therapeutic treatments and solutions for patients and their doctors. In her capacity as Worldwide Chair of MedTech, Ms. McEvoy oversaw a collection of operating companies with a budget of over $25 billion and over 70,000 employees.

Ms. McEvoy was not involved in the events at issue in this case. She did not negotiate the Agreement between ChemImage and Ethicon, which was one of many operating companies in her portfolio. *See* McEvoy Decl. ¶ 2. She did not oversee the project, which was managed by an Ethicon project team that reported up to the head of Ethicon, who reported to Peter Shen, J&J's

---

[1] The parties met and conferred on September 20, 2024 during which ChemImage claimed the noticed deposition was relevant to whether J&J was a party to the Agreement, and offered to withdraw Ms. McEvoy's deposition notice if Defendants would stipulate that J&J was bound by the Agreement. Ex. 1 at 4. The following business day, before Defendants had the opportunity to consider that offer, ChemImage withdrew its offer and claimed Ms. McEvoy's deposition was relevant for other reasons. Ex. 1 at 2.

Judge Furman | Page 2
September 27, 2024

former Global Head of MedTech R&D, who in turn reported to Ms. McEvoy. *Id.* ¶¶ 2, 5. She received occasional updates about the project, as she would on other projects underway at any other MedTech company. *Id.* ¶ 5. And she was not involved in the decision to terminate the Agreement, which was driven by the Ethicon project team. *Id.* ¶ 6.

The documents produced in this case confirm what Ms. McEvoy has attested in her declaration. Within the six-month pre-contract negotiation period, Ms. McEvoy received one email about the status of Ethicon's negotiations with ChemImage and was copied on an email summarizing the key terms and reflecting J&J's final approval of the deal after it had already been negotiated. In the post-execution time period, Ms. McEvoy received roughly a dozen "Deal Committee Monthly Update" presentations and other high-level MedTech leadership team updates. These documents contained brief updates about the ChemImage project alongside updates about numerous other projects across the entire MedTech business, investments, and general market trends that are irrelevant to the issues in this case. Similarly, other documents reflect that lower-level employees occasionally provided high-level updates to Ms. McEvoy on the status of the project and of a potential contract renegotiation that never occurred, and that Ms. McEvoy attended at least one presentation at which ChemImage's technology was discussed alongside numerous technologies in the MedTech pipeline. Ms. McEvoy sent a single email in response to an update on Ethicon's proposal to modify ChemImage's next deliverable after ChemImage struggled to meet the early-stage milestones. That email stated in full: "I appreciate update Rich. Team is on it. This space is important to our future." Apart from this email, there are no communications from Ms. McEvoy in either party's production, which include more than 120,000 documents.

### A. Legal Standard

Under settled law, senior executives are "safeguarded from depositions" unless "the executive has 'unique evidence, personal knowledge of the claims at issue,' and 'other witnesses are incapable of providing testimony about the conduct alleged." *Harapeti v. CBS Television Stations Inc.*, 2021 WL 3932424, at *2 (S.D.N.Y. Sept. 2, 2021) (quotations omitted). Recognizing that depositions can disrupt business operations and have the potential to harass, courts routinely quash deposition subpoenas of senior executives—including former executives—who lack unique, personal knowledge. *See Morrison v. Scotia Capital (USA) Inc.*, 2024 WL 3316086, at *3 (S.D.N.Y. June 7, 2024) (deposition of former executive was "not proportional to the needs of the case given his limited knowledge of Plaintiff and the information that c[ould] be obtained from the other individuals to be deposed" and "unnecessarily cumulative and burdensome, especially considering that [the former executive] [wa]s no longer a current employee"); *see also Lederman v. New York City Dept. of Parks and Recreation*, 731 F.3d 199, 203 (2d Cir. 2013).[2]

### B. Argument

Ms. McEvoy lacks the unique, personal knowledge that would make her an appropriate

---

[2] This same standard is applied in the Third Circuit, where Ms. McEvoy is located and would sit for deposition. *United States ex rel. Galmines v. Novartis Pharms. Corp.*, 2015 WL 4973626, at *2 (E.D. Pa. Aug. 20, 2015).

Judge Furman | Page 3
September 27, 2024

apex deponent. ChemImage claims to have "documents showing Ms. McEvoy's involvement in approving, monitoring, and considering amendments to the Agreement." *See* Ex 1 at 2. But these documents are exactly the same handful of documents described in detail above, and they do not show that Ms. McEvoy has unique personal knowledge of anything. Rather, they show that *others* at Ethicon provided Ms. McEvoy with sporadic updates about the program. As the recipient of these updates, Ms. McEvoy's knowledge was manifestly not unique.

As such, ChemImage cannot overcome the presumption that a high-level official's deposition represents a "significant burden upon the deponent and that this burden is undue" because it cannot make the two required showings: *first*, ChemImage cannot show that Ms. McEvoy has "unique evidence, personal knowledge of the claims at issue," and *second*, it cannot show that the information it seeks cannot be obtained from a lower-level employee or through less burdensome means. *Galmines*, No. CV 06-3213, 2015 WL 4973626, at *2; *Morrison*, No. 21-cv-1859 (SHS), 2024 WL 3316086, at *2.

Indeed, ChemImage has multiple less burdensome opportunities to obtain the information it seeks. ChemImage has noticed, and Defendants have not objected to, the deposition of Peter Shen, another former executive of J&J to whom Ethicon leaders reported directly. ChemImage has also noticed the deposition of Hani Abouhalka, the Company Group Chairman for Surgery at J&J, and served 30(b)(6) notices to both J&J and Ethicon on nearly 30 topics. To the extent ChemImage seeks to inquire about J&J's role in negotiating the Agreement or manifesting an intent to be bound by it, ChemImage can seek this testimony in Mr. Shen's deposition, in its deposition of J&J's corporate representative, or in depositions of other company witnesses.[3] *See Rodriguez v. SLM Corp.*, 2010 WL 1286989, at *2 (D. Conn. Mar. 26, 2010) (quashing deposition of senior executives where plaintiffs had the opportunity to conduct a 30(b)(6) deposition). To the extent ChemImage seeks information contained in high-level updates shared with Ms. McEvoy, it can ask the lower-level employees who actually prepared and shared that information. *Frasers Grp. PLC v. Gorman*, No. 23 MISC. 348 (PAE), 2023 WL 6938284, at *4 (S.D.N.Y. Oct. 19, 2023), aff'd sub nom. *Frasers Grp. PLC v. Stanley*, 95 F.4th 54 (2d Cir. 2024) (quashing deposition of senior executive where plaintiff could seek "testimony from the lower-ranking [company] personnel who participated" in the events at issue). Any other relevant topics can be addressed at the depositions of Messrs. Shen, Abouhalka, or Defendants' 30(b)(6) representatives.

ChemImage appears to seek Ms. McEvoy's testimony for the same reasons it sought her documents: to fabricate a nebulous connection between the project at issue in this case and a robotics program that was at issue in a separate litigation in which Ms. McEvoy was a party. *See* Dkt. Nos. 74, 77. The Court properly rejected ChemImage's demands then and, for the same reasons, should do so again here. Dkt. No. 83. There is no legitimate basis to require Ms. McEvoy to sit for a deposition. Her notice should be quashed.

                                                              Respectfully submitted,

---

[3] While Mr. Shen retired from J&J several months before the Agreement was terminated, Mr. Abouhalka was the Company Group Chairman for Robotics & Digital at the time. Moreover, ChemImage plans to depose Francesc Fernandez, the individual who sent the termination notice.

Judge Furman | Page 4
September 27, 2024

                                                   */s/ Rachel B. Sherman*
                                                   Rachel B. Sherman

The Court agrees with Defendants that Ashley McEvoy lacks "unique or personal knowledge of the claims at issue." Harapeti v. CBS Television Stations Inc., No. 21-MC-680 (PAE), 2021 WL 3932424, at *2 (S.D.N.Y. Sept. 2, 2021). Accordingly, Defendants' letter motion is GRANTED substantially for the reasons set forth above. The Clerk of Court is directed to terminate ECF No. 84. SO ORDERED.

October 11, 2024