UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHEMIMAGE CORPORATION<br><br>Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON and ETHICON, INC.<br><br>Defendants. | **JOINT PRETRIAL STATEMENT**<br><br>24-CV-2646 (JMF) |

The parties, having conferred among themselves, submit the following joint pretrial statement pursuant to Federal Rule of Civil Procedure 26(a)(3) and the Individual Rules and Practices in Civil Cases of District Judge Jesse M. Furman, paragraph 6(A).

**I.    The full caption of this action.**

*ChemImage Corporation v. Johnson & Johnson and Ethicon, Inc.*, 24-cv-2646 (JMF).

**II.    The names, law firms, addresses, telephone number, and email addresses of trial counsel if not already listed on the docket.**

The names, law firms, addresses, telephone numbers, and email addresses of all trial counsel are listed on the docket.

**III.    Brief statement by plaintiff as to the basis of subject matter jurisdiction, and a brief statement by each other party as to the presence or absence of subject matter jurisdiction. Such statements shall include citations to all statutes relied on and relevant facts as to citizenship and jurisdictional amount.**

**A.    Plaintiff's Statement**

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, and the parties are citizens of different states. *See infra* § IX, Parties' Stipulated Facts, at ¶¶ 1-3.

**B.    Defendants' Statement**

Defendants do not dispute subject matter jurisdiction.

**IV.** **Brief summary by each party of the claims and defenses that the party asserts remain to be tried, including citations to any statutes on which the party relies. Such summaries shall also identify all claims and defenses previously asserted that are not to be tried. The summaries should not recite any evidentiary matter.**

**A.** **Plaintiff's Summary**

Plaintiff ChemImage Corporation ("ChemImage") brings four claims under New York law, each of which remains to be tried: (1) breach of contract against Ethicon[1] for failure to comply with the express contractual obligations of the parties' Research, Development, License and Commercialization Agreement (the "Agreement") when purporting to terminate the Agreement "for cause"[2]; (2) tortious interference asserted against Johnson & Johnson for knowingly and maliciously causing Ethicon to breach the Agreement; (3) a judgment against Ethicon declaring that all intellectual property be treated in accordance with a "without cause" termination, under Section 10.4.4.(a) of the Agreement; and (4) a damages award that includes, *inter alia*, attorneys' fees against Ethicon, as expressly provided for in the Agreement, Appendix C. For additional detail on these claims, Plaintiff respectfully incorporates by reference its Proposed Findings of Fact and Conclusions of Law.

**B.** **Defendants' Summary**

Defendants deny all of ChemImage's claims and assert 8 defenses that remain to be tried:

(1) Plaintiff's claims are barred because Plaintiff has committed material breaches of the contract on which it bases its causes of action, such that Defendants are discharged from further

---

[1] Plaintiff's Amended Complaint previously asserted its contract claim as against both Defendants, Ethicon and Johnson & Johnson. Plaintiff intends to try its contract claim against Ethicon only, and its tortious interference claim against Johnson & Johnson only.

[2] Plaintiff's Amended Complaint styled this as two separate counts for Breach of Contract, with Count II pled in the alternative. However, Plaintiff intends to try a single breach of contract claim, asserting multiple independent breaches.

performance; (2) Plaintiff's claims are barred, in whole or in part, because Plaintiff has not suffered any loss, damage or injury as a result of the conduct in the Amended Complaint; (3) Plaintiff fails to and cannot prove money damages with any degree of certainty sufficient to permit recovery of damages; (4) Plaintiff failed to mitigate damages, if any; (5) the Amended Complaint fails because Plaintiff was harmed as a result of its own conduct and/or the conduct of its representatives, agents and/or consultants; (6) Plaintiff brought this action against one or more of the wrong parties; (7) If Defendants are found to have wrongfully terminated the Agreement with Plaintiff, which Defendants deny, Defendants acted at all times on the basis of good faith and reasonable belief that their actions were in compliance with the Agreement, all applicable state and federal laws and/or written administrative regulations, orders, rulings or interpretations, and therefore, Defendants' actions were not willful; (8) Plaintiff's claims are barred in whole or in part by the economic interest defense.[3]

Principally, Defendants will establish that ChemImage cannot recover under a contract that ChemImage materially breached. Further, ChemImage's contract claims cannot be maintained against Johnson & Johnson, a non-party to the Agreement between Ethicon and ChemImage. Defendants will also establish that ChemImage failed to prove its claim for tortious interference with contract and that, in any event, that claim would be subject to the economic interest defense.

---

[3] Defendants asserted five defenses that are not to be tried: (i) The Amended Complaint, in whole or in part, fails to state a claim against Defendants upon which relief can be granted; (ii) Plaintiffs' claims are barred in whole or in part by the doctrine of unclean hands; (iii) Plaintiff's claims are barred by the equitable doctrine of estoppel; (iv) If Defendants are found to have failed to pay Plaintiff any amount due, which Defendants deny, Defendants are entitled to set off any overpayments or other sums owed by Plaintiff to Defendants against any judgment; (v) Plaintiff's claims are barred in whole or in part by the competitor's privilege.

A more detailed discussion of all of Defendants' factual and legal defenses and arguments is contained in its accompanying Proposed Findings of Fact and Conclusions of Law, which is incorporated herein by reference.

**V.     Statement as to the number of trial days needed and whether the case is to be tried with or without a jury.**

The Case is to be tried by a Bench Trial.  The parties anticipate that it will take 5 days to complete.  *See* Dkt. 101 at 2.

**VI.    Joint statement summarizing the nature of the case, to be read to potential jurors during jury selection.**

Not applicable.  This trial is set to be tried without a jury.

**VII.   A list of people, places, and institutions that are likely to be mentioned during the course of the trial, to be read to potential jurors during jury selection.**

Not applicable.  This trial is set to be tried without a jury.

**VIII.  Statement as to whether all parties have consented to trial by a magistrate judge, without identifying which parties do or do not consent.**

The parties have not consented to trial by a magistrate judge.

**IX.    Any stipulation or agreed statements of fact or law to which all parties consent.  In a jury case, the parties should memorialize any such stipulations or agreed statements of fact or law in a standalone document that can be marked and admitted at trial.**

The parties agree to the following factual stipulations:

1.     ChemImage Corporation is a Delaware corporation with its principal place of business at 7325 Penn Avenue, Suite 200, Pittsburgh, PA 15208.

2.     Johnson & Johnson ("J&J") is a New Jersey Corporation with its principal place of business at One Johnson & Johnson Plaza, New Brunswick, NJ 08933.

3.     Ethicon is a wholly-owned subsidiary of J&J within the J&J MedTech business segment. Ethicon is a New Jersey corporation with its principal place of business at U.S. Highway 22 West, Somerville, NJ 08876.

4.     On December 27, 2019, Ethicon and ChemImage entered into the Research, Development, License, and Commercialization Agreement (the "Agreement"). *See* PX-1 (DEF_00559404); DX1 (DEF_00559404).[4]

5.     The Agreement, PX-1 and DX1, is a valid and enforceable contract.

6.     "Project Erie" was the name given to the parties' work under the Agreement.

7.     On December 16, 2022, ChemImage submitted the "Erie Program CS VAB Final Report" (the "VAB Final Report"). *See* PX-768 (DEF_00433911); DX7A (DEF_00433911).[5]

8.     On March 6, 2023, Ethicon sent ChemImage a letter providing notice of its "intent to terminate the Agreement for cause" (the "Termination Letter"). *See* PX-3 (DEF_00722787-DEF_00722789); DX 14 (DEF_00722787-DEF_00722789).[6]

9.     On April 7, 2023, representatives from Ethicon and ChemImage met in Atlanta, Georgia. Dr. Patrick Treado, Dr. Jeffrey Cohen, and Richard Ruben attended in-person for ChemImage. Tamara Lanier and Fransesc Fernandez attended in-person for Ethicon, and Steen Hansen attended remotely by a video call for Ethicon.

The parties further agree to the following stipulations of law:

10.     The parties stipulate to the authenticity of any business record, as contemplated by Federal Rule of Evidence 803(6), such that any document produced in discovery in this action by

---

[4]   The Parties stipulate to the admissibility of the Agreement, PX-1; DX1.

[5]   The Parties stipulate to the admissibility of the VAB Final Report, PX-768; DX7A.

[6]   The Parties stipulate to the admissibility of the Termination Letter, PX-3; DX14.

any party that on its face appears to have been prepared or received by an employee, officer, or agent of the person or entity producing such document, or in the case of any document with the custodial value Ethicon SharePoint that on its face appears to have been prepared or received by an employee, officer, or agent of any party, and including but not limited to documents bearing the Bates range CI00105747 through CI00106141, shall be deemed to be a true and correct copy of a document maintained in that person or entities' files, unless there is a good faith basis for objecting that the document is not what it purports to be (for example, that it is fabricated or there is otherwise credible indicia of its lack of trustworthiness), subject to the Parties' preservation of all other evidentiary objections. The parties reserve all rights to object to the admissibility of such documents.

11. The parties stipulate that, to the extent a party adds a document produced in this litigation to their exhibit list that was not introduced at a deposition, the parties will endeavor to compile into one exhibit the full document family for that document, unless doing so would be unduly burdensome.

12. The parties stipulate that they may amend their respective exhibit lists until February 28, 2025. The parties further stipulate that, to the extent they serve an amended exhibit list on or before February 28, 2025, the receiving party shall serve its objections to any newly added exhibits within five days of receiving the opposing party's amended exhibit list and, in any event, no later than March 5, 2025 at 5:00 PM ET.

13. The parties stipulate that, in limited circumstances, such as to address an issue raised that day at trial or for other good cause shown, the parties may add exhibits to their respective exhibit lists from March 1, 2025 onward, throughout the duration of the trial, so long as the exhibits are disclosed as soon as possible, and in any event no later than 6:00 PM ET the day

before the party intends to use that exhibit at trial.  Each party reserves the right to lodge objections and have those objections heard by the Court.

14.     The parties stipulate that deposition testimony designated by Plaintiff shall be highlighted in yellow, any deposition testimony designated by Defendants shall be highlighted in blue, and any deposition testimony designated by both parties shall be highlighted in green.

15.     The parties stipulate that to the extent a party intends to submit video excerpts of timely designated deposition testimony to the Court, those videos, which shall include designations and counter designations, shall be served on the parties and emailed to the Court no later than March 5, 2023.  The parties further stipulate to confer on the format of those videos.

**X.      A list of all trial witnesses, (in alphabetical order), indicating whether such witnesses will testify in person or by deposition, whether such witnesses will require an interpreter (and, if so, which party will pay the costs for the interpreter), and a brief summary of the substance of each witness's testimony. Absent leave of Court, a witness listed by both sides shall testify only once (with the defendant permitted to go beyond the scope of the direct on cross-examination), and counsel should confer with respect to scheduling.**

### A.      <u>Plaintiff's Witness List</u>

Plaintiff expects that it will call some or all of the witnesses identified below to testify at trial or by deposition.  If any witness listed below is unavailable, Plaintiff reserves the right to offer deposition testimony from such witness.  Plaintiff reserves the right to call live or by designated testimony any witness listed on Defendants' witness list and to call any additional witnesses in rebuttal to those witnesses called by Defendants.  Plaintiff also reserves the right to designate and offer testimony from Defendants' experts to the extent that they do not testify live.  Plaintiff reserves the right to call any witness for impeachment purposes.

By identifying these witnesses, Plaintiff is not required to call them at trial, nor is Plaintiff limited in the manner in which such testimony is presented at trial.

None of the following witnesses in Plaintiff's witness list require an interpreter.

16.     **Hani Abouhalka** (*by deposition*):  ChemImage will present fact testimony from Hani Abouhalka, Company Group Chairman of Surgery at J&J, via deposition designation.  Mr. Abouhalka will testify that J&J saw tremendous value in ChemImage's technology which, when paired with Defendants' surgical robots, would give Defendants a competitive advantage in the surgical robotics field.  Mr. Abouhalka will testify that J&J has plans to and is currently developing its own technologies to identify critical structures during surgery—which is the exact scope of Project Erie.  Mr. Abouhalka will also testify regarding Project Erie's budget, which fell under his control at J&J, and that approval from J&J personnel was required to amend the Agreement.

17.     **David Berkman** (*in person*):  ChemImage may present live rebuttal fact testimony from David Berkman.

18.     **Cambridge Consultants, via its corporate representative, Lee Glover** (*in person and by deposition*):  ChemImage will present fact testimony from Lee Glover, Cambridge Consultants' 30(b)(6) witness.  Cambridge Consultants was Defendants' long-time consultant, and specifically, their consultant on Project Erie.  Through his 30(b)(6) deposition, Lee Glover will testify that Cambridge initially proposed using special annotations to label uncertain regions in a surgical scene, which eventually became the "ignore labels" used in Project Erie.  Mr. Glover will testify that Cambridge and Ethicon were aware of ChemImage's use of ignore labels through weekly meetings during which Cambridge and Ethicon representatives reviewed data annotated by ChemImage, including data with general ignore labels and target-specific ignore labels.  Mr. Glover will testify that Cambridge's review of relevant literature revealed that others in the field also adopted techniques for identifying ambiguity when determining ground truth.  Mr. Glover will testify that Cambridge advised Ethicon that a quantitative assessment was necessary in order to draw meaningful conclusions about the impact of ChemImage's use of ignore labels, but that

Ethicon never requested any such analysis. In person, Mr. Glover may also testify about Cambridge's comparative assessment of ChemImage's technology as a market leader in the emerging imaging and visualization market.

19. **Dr. Jeffrey Cohen, MD** (*in person*): ChemImage will present fact testimony from Dr. Jeffrey Cohen, ChemImage's Chief Executive Officer and former Chief Medical Officer, via live testimony and direct witness affidavit. Dr. Cohen will testify regarding ChemImage's development efforts and achievements prior to Project Erie, the significant value proposition of ChemImage's technology, and that several companies were interested in partnering with ChemImage before ChemImage entered into the Agreement with Ethicon. Dr. Cohen will testify regarding ChemImage's mission and goal to revolutionize surgery and cancer treatments and the tremendous progress ChemImage made in advancing its technology under the Agreement. Dr. Cohen will also testify that, despite ChemImage's best efforts, Project Erie suffered delays due to Ethicon's inability to develop required hardware for Project Erie and lack of understanding of ChemImage's technology. Dr. Cohen will further testify regarding Ethicon's termination of the Agreement and that Ethicon refused to provide sufficient information to allow ChemImage to cure any purported breach. Dr. Cohen will also testify that, despite his pleas, Ethicon refused to return rights to the ChemImage intellectual property that had been exclusively licensed to Ethicon under the Agreement. Dr. Cohen will testify that Ethicon's improper termination clouded ChemImage's intellectual property assets and precluded ChemImage from entering into a partnership with another company, which resulted in ChemImage terminating its employees and closing its doors.

20. **Rocco De Bernardis** (*in person*): Subject to Plaintiff's Motion in Limine (Dkt. 126) to preclude Mr. De Bernardis from trial based on Defendants' failure to disclose him (or any other J&J individual) in Defendants' Rule 26 Disclosures, ChemImage will present fact testimony

from Mr. De Bernardis, J&J Global President OTTAVA & Advanced Visualization, regarding J&J's decision to terminate the Agreement, including details of how J&J directed Ethicon to terminate the Agreement even though it knew that termination for purported failure to achieve a subset of a Milestone was prohibited by the Agreement.  Mr. De Bernardis may also testify about J&J's strategy to internalize ChemImage's technology.

21.     **Francesc Fernandez (*in person*)**:  ChemImage may present fact testimony from Francesc Fernandez, Ethicon's VP of R&D, regarding Mr. Fernandez's recommendation that Defendants terminate the Agreement before the parties had completed their Q/A on ignore labels and before Cambridge Consultants issued any report regarding Ignore Labels or the VAB Final Report.  Mr. Fernandez will also testify about his personal knowledge of J&J's strategy to "internalize" ChemImage's technology.

22.     **Heather Gomer (*by deposition*)**:  ChemImage will present fact testimony from Heather Gomer, Director of Algorithms at ChemImage, via deposition designation.  Ms. Gomer will testify regarding Ethicon's engagement of third party, Kitware, purportedly to assist ChemImage with algorithm development.  Ms. Gomer will testify that Kitware ultimately provided no assistance to ChemImage.

23.     **Dr. Steen Hansen (*in person and by deposition*)**:  ChemImage will present fact testimony from Dr. Steen Hansen, Ethicon's Director of Advanced Visualization Technologies and Defendants' 30(b)(6) witness.  Through his 30(b)(6) deposition, Dr. Hansen will testify that Defendants' decision to terminate the Agreement was primarily driven by their questions regarding ignore labels.  In particular, Defendants claim that ChemImage was required to discuss every decision to apply an ignore label with Ethicon.  Dr. Hansen will also testify that Ethicon only analyzed a small percentage of the 168 negative controls included in the VAB Final Report before

10

concluding that questions about negative controls were a reason to terminate the Agreement. Dr. Hansen will testify that the only data discrepancy Ethicon identified in the VAB Final Report was a single negative control example that was replaced compared to the interim final report. Dr. Hansen will testify that Ethicon did not otherwise verify the performance metrics reported in the VAB Final Report prior to termination, and that Ethicon only reviewed a small sampling of the runfiles used to generate the final report, that were not picked according to any systematic methodology. In person, Dr. Hansen will expound on these topics and others, including his personal knowledge of, and involvement in, J&J's strategy to "internalize" ChemImage's technology.

24. **Tamara Lanier (*in person and by deposition*)**: ChemImage will present fact testimony from Tamara Lanier, Ethicon's Area Director, former Ethicon member of the JSC, and Defendants' 30(b)(6) witness. Through her 30(b)(6) deposition, Ms. Lanier will testify that Defendants believed the Erie Technology would add substantial value to their product offerings. Ms. Lanier will testify that the Agreement empowered the JSC to adjust the development timeline, and that Ethicon and the JSC agreed to adjust the Milestone 1B timeline by focusing on VAB through year end 2022 and postponing nerves and ureters to 2023. Ms. Lanier will testify that Ethicon relied on analysis from Cambridge Consultants to understand the potential impact of ChemImage's use of ignore labels, but failed to follow Cambridge Consultants' advice to perform a quantitative analysis in order to draw meaningful conclusions. Ms. Lanier will also testify that Ethicon failed to both convene a JSC meeting to make a determination on Milestone 1B and to pursue the dispute resolution protocols required under the Agreement in the event of a JSC "deadlock." In person, Ms. Lanier will expound on these topics and others, including Ms. Lanier's recommendation that Defendants terminate the Agreement before the parties had completed their

Q/A on ignore labels and before Cambridge Consultants issued any report regarding Ignore Labels or the VAB Final Report.  Ms. Lanier will also testify about her personal knowledge of, and involvement in, J&J's strategy to "internalize" ChemImage's technology.

25. **David Plastino** (*in person*):  ChemImage will present expert testimony via live testimony and witness affidavit from David Plastino, ChemImage's valuation expert, regarding ChemImage's substantial monetary injuries resulting from Defendants' improper termination of the Agreement.  Mr. Plastino will testify that Defendants' breach caused ChemImage over $170 million in damages, including a contractual $40 million termination payment and more than $120 million in damages for impairing the value of ChemImage's intellectual property and related medical imaging assets.  Mr. Plastino will testify regarding the methodology supporting his impairment calculation, which uses an industry standard Discounted Cash Flow ("DCF") model.  Mr. Plastino will also testify that Mr. Donohue's (Defendants' damages expert) criticisms of Mr. Plastino's impairment calculations are flawed and contain several methodological errors.

26. **Paul Ritchie** (*by deposition*):  ChemImage will present fact testimony from Paul Ritchie, former Director of Innovation and Pipeline at Ethicon, who served as Ethicon's Project Erie lead and as an Ethicon JSC member from 2020-2022, via deposition designation.  Mr. Ritchie will testify that he reviewed the Agreement as part of his job at Ethicon, and that as a JSC member he understood that the Agreement imposed no deadlines by which ChemImage had to meet the Milestones in the Agreement and that he shared this understanding with others at Ethicon.  Mr. Ritchie will also testify that, as a JSC member, he understood that Ethicon could not unilaterally impose a deadline by which a Milestone had to be met, change the criteria for a Milestone, or decide whether a Milestone had been met.  Mr. Ritchie will testify that only the JSC could determine whether a Milestone had been met, as stated in the Agreement and according to the

process the parties followed for Milestone 1A and the Perfusion component of Milestone 1B.  Mr. Ritchie will testify that, as an Ethicon JSC member, he understood that nothing in the Agreement permitted Ethicon to terminate the Agreement upon failure to achieve a portion of a Milestone (which Ethicon did here).  Mr. Ritchie will also testify that Ethicon had no expertise in hyperspectral imaging technology similar to ChemImage's, that Ethicon did nothing over the course of the Agreement to increase its expertise in that area, and that issues with Ethicon's technology delayed Project Erie.

27.  **Breana Roides** (*in person*): ChemImage may present fact testimony from Breanna Roides, Ethicon's Senior Marketing Manager, regarding her personal knowledge of J&J's strategy to "internalize" ChemImage's technology.

28.  **Dr. Adam Saltman, MD** (*in person*):  ChemImage will present fact testimony from Dr. Adam Saltman, former Chief Medical Officer of ChemImage, via live testimony and witness affidavit.  Dr. Saltman will testify regarding the procedure used by ChemImage surgeons (including himself) and Ethicon veterinary surgeons to collect data during the Erie Labs and to determine "ground truth" (*i.e.*, the presence and locations of critical structures) within surgical scenes.  Dr. Saltman will testify about the measures employed to maximize collection of useful data and reduce uncertainty in the ground truth determinations, including improvements he proposed and implemented to the ground truth review process.  Dr. Saltman will testify regarding how ChemImage's Ground Truth Team engaged with the surgeons to annotate scenes based on the surgeons' ground truth determinations, and the reasons why uncertainty was present in many scenes, necessitating the use of ignore labels.  Dr. Saltman will testify that Ethicon surgical staff were present during the Erie Labs, and were also aware of the agreed-upon process for evaluating

ground truth and applying ignore labels.  Dr. Saltman will testify regarding other contributions he made to promoting and advancing Project Erie.

29.  **Peter Shen** (*by deposition*):  ChemImage will present fact testimony from Peter Shen, former Global Head of Research, Development and Innovation at J&J MedTech, via deposition designation.  Mr. Shen will testify regarding his conclusions following his "deep dive" into ChemImage's technology on behalf of J&J.  Specifically, Mr. Shen will testify that he believed VAB showed promising results.  Mr. Shen will also testify that Defendants, not ChemImage, asked that ChemImage "prioritize" submission of a Final Report on a subset of Milestone 1B—limited to Veins, Arteries, and Bile Ducts ("VAB")—while expressly "postponing" work on Ureters and Nerves to 2023.  Mr. Shen will also testify about how the anticipated value of ChemImage's technology made it a priority project for J&J, while acknowledging that Ethicon struggled to integrate Project Erie technology in to J&J's robotics platforms.  Mr. Shen will also testify about the requirement for J&J leadership to approve any amendments to the parties' Agreement.

30.  **Dr. Daniel Sodickson, MD, PhD** (*in person*):  ChemImage will present expert testimony from Dr. Daniel Sodickson, ChemImage's expert on medical imaging technologies that utilize artificial intelligence, via live testimony and witness affidavit.  Dr. Sodickson will testify regarding the technological concepts embodied in ChemImage's multispectral imaging technology, including the relevant principles of machine learning, and in particular, deep learning artificial intelligence models and training of such models.  Dr. Sodickson will testify that the bases raised in Defendants' Termination Letter failed to show that the VAB Final Report was "unevaluable" or that ChemImage had not met Milestone 1B.  In particular, Dr. Sodickson will testify that uncertainty in ground truth for surgical scenes is normal and expected, and that ChemImage's use of ignore labels for uncertain ground truth was consistent with both industry

standards and best practices for AI model training and DRB determinations regarding the permitted use of ignore labels. Dr. Sodickson will also testify that there was no relevant uncertainty regarding negative controls, and that ChemImage had demonstrated that the Erie technology met the Acceptance Protocol for negative control scenes. Dr. Sodickson will also testify about arguments not presented in the termination letter that were subsequently raised by Defendants, including low "N" values for deeper obscuration levels and arguments about "clinical relevance" and explain why these arguments do not demonstrate that ChemImage had failed to satisfy the Acceptance Protocol. Finally, Dr. Sodickson will testify that even if any of the issues raised by Defendants had merit, they could have been easily cured had ChemImage been provided an opportunity to cure, as required under the Agreement.

31. **Dr. Patrick Treado (*in person*):** ChemImage will present fact testimony from Dr. Patrick Treado, Founder and President of ChemImage, via live testimony and witness affidavit. Dr. Treado will testify regarding the founding and growth of ChemImage, including his hiring of qualified staff. Dr. Treado will testify regarding ChemImage's historical work, including ChemImage's work with external partners other than Defendants, and ChemImage's early successes partnering with Ethicon and J&J, which led Defendants enter into the Agreement with ChemImage. Dr. Treado will testify regarding the development and operation of ChemImage's multispectral imaging technology, including the reasons for incorporating AI into the technology, and the process used to train the ChemImage AI model. Dr. Treado will testify about ChemImage's initial progress in Project Erie, include the successful achievement of Milestone 1A and the Perfusion component of Milestone 1B. Dr. Treado will testify about the data collection, ground truth determination, and data annotation processes employed by ChemImage for AI model training as part of Project Erie, the efforts taken to maximize the effectiveness of those processes,

and ChemImage's regular communications with Defendants regarding those processes, including at Joint Steering Committee and Data Review Board meetings. Dr. Treado will testify about roadblocks to Project Erie's success created by Defendants, including J&J and Ethicon employee turnover and lack of engagement through Project Erie, delays caused by Defendants' lack of technical expertise and underdeveloped hardware platform, and frequent changes in Defendants' priorities. Dr. Treado will testify about the limited contributions made by Defendants' third-party consultants, including Kitware and Cambridge Consultants, and Ethicon's belief that ChemImage's team brought world class expertise to the project. Dr. Treado will testify about the preparation and submission of the VAB Final Report, including ChemImage's demonstration that the jointly established Acceptance Criteria for Milestone 1B was met. Dr. Treado will testify about Defendants' termination letter, ChemImage's attempts to understand the bases for termination and cure any potential issues identified by Defendants, and Defendants' refusal to meaningfully engage.

32. **Dr. Alyssa Zrimsek (*by deposition*):** ChemImage will present fact testimony, via deposition designation, from Dr. Alyssa Zrimsek, former Principal Scientist at ChemImage. Dr. Zrimsek will testify regarding the ground truth process in Erie Labs. Specifically, Dr. Zrimsek will testify that surgeons (primarily from Ethicon) determined ground truth by conducting surgery on animals in Erie Labs. In later Erie Labs, ChemImage's ground truth team would be present in the surgical suite, and would participate in a live discussion regarding the application of annotations to surgical scenes that were being collected. This discussion included the determination of any uncertain regions in the scene. These discussions, including the surgeons' narrations reaching consensus on ground truth, were recorded. And, if necessary, the ChemImage ground truth team could refer to these recordings after the labs. Dr. Zrimsek will also testify that

the DRB approved the use of ignore labels, consistent with issued guidance. Dr. Zrimsek will also testify that "general" and "target" ignore labels have the same meaning, since both refer to unresolved ground truth. Finally, Dr. Zrimsek will testify that the criteria for the use of ignore label application was simply: unresolved ground truth.

## B. Defendants' Witness List

Defendants expect that they will call some or all of the witnesses identified below to testify at trial or by deposition. If any witness listed below is unavailable, Defendants reserve the right to offer deposition testimony from such witness. Defendants reserve the right to call live or by designated testimony any witness listed on ChemImage's witness list and to call any additional witnesses in rebuttal to those witnesses called by ChemImage. Defendants also reserve the right to designate and offer testimony from ChemImage's experts to the extent that they do not testify live. Defendants reserve the right to call any witness for impeachment purposes.

By identifying these witnesses, Defendants are not required to call them at trial, nor are Defendants limited in the manner in which such testimony is presented at trial.

### 1. David Berkman (in person or by deposition)

David Berkman is a board member of ChemImage and a trustee of ChemImage's primary stockholder, DBM Associates. Defendants anticipate that Mr. Berkman will testify that during his family's twenty-year involvement with ChemImage, his family issued approximately $100 million in debt to the company, all of which remains outstanding, and that ChemImage was frequently on the verge of going out of business. Defendants also anticipate that Mr. Berkman will testify that during the lifetime of the Agreement, ChemImage had no meaningful sources of revenue beyond the funds it was receiving from Ethicon and his family. Mr. Berkman will further testify that in 2022, ChemImage shuttered many of its lines of business, and that it nonetheless continued to

struggle financially. Finally, Mr. Berkman will testify that he is not aware of any efforts ChemImage took to cure the deficiencies outlined by Ethicon in its March 6, 2023 notice of termination.

Defendants expect that Mr. Berkman will testify by deposition, and he will not require an interpreter.

### 2. Jeffrey Cohen, M.D. (in person and by deposition)

Jeffrey Cohen is the President of ChemImage. He has held this position since 2016. Defendants anticipate that Dr. Cohen will testify in person and through testimony as a corporate representative on at least the following subject matters: ChemImage's finances, including a $100 million-plus loan it received from the Berkman family prior to the parties entering into the Agreement; ChemImage's repeated requests to Ethicon for additional funding and cash advances; ChemImage's receipt and use of funds paid by Ethicon to fund Project Erie and for other purposes; ChemImage's damages assertions in its Amended Complaint, including the supposed lost value of its intellectual property and winding down of ChemImage's businesses; the supposed bases for ChemImage's assertion that J&J knowingly and maliciously caused Ethicon to breach the Agreement; and ChemImage's inability to attract investors and business partners.

Defendants expect that Dr. Cohen will testify in person and by deposition, and he will not require an interpreter.

### 3. Joseph Corrigan, Meng. (in person)

Joseph Corrigan is the Head of Technology for the Intelligent Services and Healthcare business units at Cambridge Consultants, Ltd. ("Cambridge"). He has a degree in Mechanical Engineering and over fifteen years of work experience in artificial intelligence and machine learning (AI/ML). Defendants anticipate Mr. Corrigan will testify about Cambridge's independent

review of ChemImage's Milestone 1A report, which raised concerns about ChemImage's data collection practices and the performance of its technology. Defendants anticipate Mr. Corrigan will also provide testimony about the review that Cambridge conducted of ChemImage's use of ignore labels in connection with its Milestone 1B Final VAB report, which, as Cambridge concluded, created a significant risk that the metrics in that report were misleading indicators of performance. Defendants anticipate that Mr. Corrigan will also provide testimony about Cambridge's review of ChemImage's source of segmentation information, the aim of which was to determine whether ChemImage's algorithm was using contextual information to determine the location of critical structures.

Defendants expect that Mr. Corrigan will testify by written affidavit and in person, and he will not require an interpreter.

### 4. Rocco De Bernardis (in person)

Rocco De Bernardis is the Global President of Ottava, a developmental program of J&J, who leads strategy, development, and commercialization of J&J's Digital Surgery platform. From 2021 to 2023, Mr. De Bernardis had high-level oversight of internal programs related to advanced visualization, including Ethicon's Project Erie with ChemImage. Mr. De Bernardis will testify that the goal of the Agreement was to commercialize ChemImage's hyperspectral imaging technology as integrated into an Ethicon surgical device, but that ChemImage's failure to meet more than one developmental milestone after more than two years of work—combined with significant cost overruns—prevented the project from moving forward as anticipated. Mr. De Bernardis will also testify that Ethicon determined that ChemImage's Final VAB Report revealed such flawed data collection and evaluation practices that it was unevaluable. Mr. De Bernardis will also testify that he and other senior leaders approved Ethicon's decision to terminate the

Agreement for cause after ChemImage failed to meet even a subset of the relevant development milestone.

Defendants expect that Mr. De Bernardis will testify by written affidavit and in person, and he will not require an interpreter.

### 5. James J. Donohue (in person)

James J. Donohue is a Vice President at Charles River Associates and a Certified Valuation Analyst who will provide expert testimony rebutting the opinions of Mr. David Plastino regarding ChemImage's damages claims. Mr. Donohue will testify in person about numerous flaws in Mr. Plastino's valuation approach and methodology. Specifically, Mr. Donohue will testify that ChemImage's alleged Subject Asset Impairment damages are overstated and speculative because Mr. Plastino's analysis (1) relies on the existence of an unspecified hypothetical new deal partner for ChemImage in 2023; (2) speculates about unsupported alternative deal payment terms ChemImage might obtain in 2023; (3) incorporates unsupported royalty terms; (4) incorporates inflated sales projections; and (5) incorporates outdated probability of success calculations. Mr. Donohue will testify that adjusting Mr. Plastino's analysis using the appropriate inputs yields a *negative* fair market value for the Subject Assets. Additionally, Mr. Donohue will testify that Mr. Plastino miscalculates ChemImage's claimed statutory interest and fails to substantiate ChemImage's claimed Wind Down Costs.

Defendants expect that Mr. Donohue will testify by written affidavit and in person, and he will not require an interpreter.

### 6. Ricardo Estape, M.D. (in person)

Ricardo E. Estape, M.D. is a gynecological oncology surgeon who has performed more than 26,000 surgeries and has contributed to the development of numerous robotically assisted

surgical devices, including advanced visualization products. Dr. Estape will provide expert testimony rebutting the opinions of Dr. Daniel Sodickson. Dr. Estape will testify that ChemImage neither met the metrics for the veins, arteries, and bile ducts ("VAB") portion of Milestone 1B nor established technical feasibility for identifying those critical structures. Specifically, Dr. Estape will testify that (1) ChemImage's procedures for collecting data and establishing ground truth were inconsistent with industry best practices; (2) ChemImage's use of ignore labels was not consisted with industry best practices or documented Ethicon guidance; (3) the manner in which ChemImage used negative control scenes was inappropriate, and the uncertainty surrounding its negative control data casts doubt on its overall performance results; (4) ChemImage's data practices underlying the development of its technology were inappropriate; and (5) Dr. Sodickson's report fails to address whether ChemImage met technical feasibility based on industry standards with respect to the VAB portion of Milestone 1B.

Defendants expect that Dr. Estape will testify by written affidavit and in person, and he will not require an interpreter.

### 7. Cambridge Consultants (via corporate designee Lee Glover) (by deposition)

Lee Glover served as program manager for work on Project Erie at Cambridge Consultants ("Cambridge"), which was the independent technical reviewer of Project Erie on behalf of Ethicon. Mr. Glover was designated to testify as Cambridge's corporate designee about the work performed in connection with the Agreement between Ethicon and ChemImage, including Cambridge's reviews of ChemImage's technology. Defendants anticipate Mr. Glover will testify about Cambridge's review of ChemImage's Milestone 1A report, which yielded concerns about ChemImage's data practices as well as questions about the ability of ChemImage's technology to detect critical structures at deeper depths or obscuration levels. Defendants anticipate Mr. Glover

will also provide testimony about the review that Cambridge conducted of ChemImage's use of ignore labels in connection with its Milestone 1B VAB report, which, as Cambridge concluded, created a significant risk that the metrics in that report were misleading indicators of performance. Defendants anticipate that Mr. Glover will also provide testimony about Cambridge's review of ChemImage's source of segmentation information, the aim of which was to determine whether ChemImage's algorithm was using contextual information to determine the location of critical structures.

Defendants anticipate that Cambridge will testify by deposition via corporate representative Mr. Glover. No interpreter will be required.

### 8. Heather Gomer (in person or by deposition)

Heather Gomer was ChemImage's Director of Algorithms. Defendants anticipate that Ms. Gomer will provide testimony about what constitutes good data practices, including the importance of not overusing ignore labels. Defendants anticipate that Ms. Gomer will also testify about her work on Project Erie, including with respect to development of the algorithm that ChemImage used in its efforts to meet the VAB portion of Milestone 1B. Ms. Gomer will also testify about good data practices, the formation of the Data Review Board (DRB), the DRB's decisions on the use of ignore labels, ChemImage's financial issues, including layoffs of technical workers at the beginning of 2023, ChemImage's submission of its final M1B VAB report, and ChemImage's responses to questions Ethicon had in early 2023 regarding ChemImage's use of ignore labels in its final VAB report. Ms. Gomer will provide testimony on ChemImage's use of Slack to communicate about Project Erie.

Defendants expect that Ms. Gomer will testify by deposition, and she will not require an interpreter.

### 9. Blake Hannaford, Ph.D. (in person)

Blake Hannaford, Ph.D., is Professor of Electrical and Computer Engineering at the University of Washington in Seattle, WA. Dr. Hannaford has over 35 years of postgraduate experience in embedded computing, haptic (touch) interfaces, surgical robotics and biomechanics, and biologically-based designs for robotic controls, including performing research in many areas that have employed machine learning and working in industry. Defendants anticipate that Dr. Hannaford will provide an overview of machine learning classifier algorithms and industry best practices, including best practices for scientific research. Defendants anticipate that Dr. Hannaford will offer the expert opinion that ChemImage's use of ignore labels, which it applied to virtually all of the data it collected (including testing data) did not follow industry best practices. Defendants expect that Dr. Hannaford will opine that ChemImage's widespread use of ignore labels affected the ChemImage's performance metrics as set forth in the Milestone 1B VAB Report, and will opine that the VAB Report is unreliable and unreproducible due to myriad data issues, including ignore labels and selective inclusion or exclusion of data. Defendants also anticipate that Dr. Hannaford will offer the expert opinion that the VAB Report's flaws and ChemImage's data practices were systemic, and that ChemImage could not fix the problems simply by re-running analysis on existing data.

Defendants expect that Dr. Hannaford will testify by written affidavit and in person, and he will not require an interpreter.

### 10. Steen Hansen, M.D., Ph.D. (in person)

Steen Hansen, M.D., Ph.D, currently serves as Director of Advanced Visualization at Ethicon. He was the technical lead for Ethicon's Project Erie team beginning in April 2022. Defendants expect Dr. Hansen to testify about ChemImage's ongoing struggles to

demonstrate that its hyperspectral imaging technology could detect obscured critical structures effectively and consistently. Defendants further expect Dr. Hansen to testify about ChemImage's poor data practices, including its selective inclusion of data and its improper use of ignore labels. Dr. Hansen will also testify about the DRB; his review of ChemImage's December 2022 Final VAB Report, in which ChemImage claimed success on the VAB subset of Milestone 1B; and ChemImage's responses to Ethicon's questions on ChemImage's use ignore labels in the VAB Report. Dr. Hansen will testify that because of the issues Ethicon identified, Ethicon decided to terminate the Agreement.

Defendants expect that Dr. Hansen will testify by written affidavit and in person, and he will not require an interpreter.

### 11. Tamara Lanier (in person)

Tamara Lanier is Director of Sales Excellence and Enablement for J&J MedTech Surgery. From 2017-2023, Ms. Lanier was a member of Ethicon's Advanced Visualization team. Ms. Lanier was a member of Ethicon's Project Erie team for the duration of the project and she sat on the project's Joint Steering Committee from 2021 through 2023. Ms. Lanier will testify that she was responsible for developing the milestone criteria incorporated into the Agreement to ensure clinical relevance, and for interfacing with ChemImage leadership as ChemImage encountered delays and difficulties with the development of its technology. Ms. Lanier will testify about Ethicon's goals for the development of advanced visualization capabilities, about the difficulties ChemImage faced in developing its technology and meeting its contractual obligations, about the additional funding Ethicon provided above and beyond its contractual obligations, and about ChemImage's understanding that it needed to prove feasibility of its technology's ability to detect veins, arteries, and bile ducts by the end of 2022 or face termination. Ms. Lanier will testify

about Ethicon's reasons for terminating the Agreement once Ethicon learned about the extent of technical and data deficiencies in ChemImage's VAB report. Ms. Lanier will also testify about ChemImage's failure to cure any of the deficiencies Ethicon identified with its performance.

Defendants expect that Ms. Lanier will testify by written affidavit and in person, and she will not require an interpreter.

### 12. Kevin Lewis, D.V.M. (in person)

Kevin Lewis, D.V.M., is Principal Scientist for Preclinical Research at Ethicon and a veterinarian with 18 years of experience in preclinical research and medical affairs. During 2022-2023, Dr. Lewis was the Preclinical Research Lead for Advanced Imaging and Digital Solutions and Endomechanical Devices at Ethicon, and he was involved in Project Erie beginning around January 2022. Dr. Lewis was responsible for interfacing with ChemImage with respect to its organization and execution of ChemImage's preclinical animal labs (called Erie Labs), which were conducted for the purpose of collecting data for ChemImage's work on critical structure detection, including algorithm training and testing. Defendants anticipate that Dr. Lewis will testify about his participation in the Erie Labs and in the data collection process, including the procedural workflow for establishing ground truth in the surgical suite, and in certain Ground Truth Review meetings outside the surgical suite. Dr. Lewis will testify that ChemImage annotators were outside of the surgical suite when they applied ground truth annotations to the data collected in the Erie Labs. He will also testify that he and others at Ethicon were not involved in the process of annotating the images that ChemImage had collected.

Defendants expect that Dr. Lewis will testify by written affidavit and in person, and he will not require an interpreter.

### 13. Paul Ritchie (by deposition)

Paul Ritchie was the Director of Advanced Visualization R&D at Ethicon from 2017-2022. In that role, Mr. Ritchie was involved with Project Erie until 2022. Defendants anticipate that Mr. Ritchie will provide testimony about Ethicon's funding of a pilot program with ChemImage and his understanding of why Ethicon entered into an Agreement with ChemImage. Defendants anticipate that Mr. Ritchie will also testify about the challenges ChemImage faced in developing its technology and the delays attributed to the project resulting from those challenges.

Defendants expect that Mr. Ritchie will testify by deposition, and he will not require an interpreter.

### 14. Adam Saltman, Ph.D., M.D. (in person or by deposition)

Adam Saltman, Ph.D., M.D., was ChemImage's former Chief Medical Officer. He will testify about the process that ChemImage used to perform its surgeries, collect data, and establish ground truth. Dr. Saltman will testify that ChemImage annotators changed ground truth annotations after labs had been concluded, without the involvement of Ethicon's surgeons. Dr. Saltman will also testify about ChemImage's awareness that it would face a high risk of termination if it failed to established feasibility on at least the VAB portion of Milestone 1B by the end of 2022.

Defendants expect that Dr. Saltman will testify in person and by deposition. No interpreter will be required.

### 15. Patrick Treado (in person and by deposition)

Patrick Treado founded ChemImage in 1994 and served, at various times, as its President and Chief Technology Officer. Defendants anticipate that Dr. Treado will testify in person and through testimony as a corporate representative on at least the following subject matters: Ethicon's

and Cambridge Consultants' feedback on the Milestone 1A report submitted by ChemImage, including concerns raised about ChemImage's data practices and technical performance; meetings and decisions of the Project Erie Joint Steering Committee; the Data Review Board, and Ground Truth Review meetings; the inability of ChemImage's technology to detect critical structures in accordance with the Agreement and the parties' Milestone 1B VAB acceptance protocol, including ChemImage's challenges with detecting certain critical structures; ChemImage's Milestone 1B VAB report; Ethicon's questions about ChemImage's use of ignore labels in the VAB report and ChemImage's answers to such questions; ChemImage's request to Ethicon for extra funding; and ChemImage's failure to cure the issues identified by Ethicon.

Defendants expect that Dr. Treado will testify in person and by deposition. No interpreter will be required.

**16. Alyssa Zrimsek, Ph.D. (in person or by deposition)**

Alyssa Zrimsek was ChemImage's Principal Scientist. In that role, Dr. Zrimsek was primarily responsible for ChemImage's data analysis. Defendants anticipate that Dr. Zrimsek will provide testimony about ChemImage's ground truth annotation process and its practice of applying ignore labels without any formal criteria. She will also testify that ChemImage asked Ethicon for permission to use ignore labels in specific circumstances in DRB meetings. She will testify about ChemImage's answers to Ethicon's questions on ChemImage's use of ignore labels in its final M1B VAB report and ChemImage's post-report justifications for its use of ignore labels beyond what was considered at the DRB meetings. Dr. Zrimsek will provide testimony on her and her team's use of Slack to communicate about Project Erie.

Defendants expect that Dr. Zrimsek will testify by deposition, and she will not require an interpreter.

**XI.** **A designation by each party of deposition testimony to be offered in its case-in-chief and any [objections] and counter-designations as follows. The parties need not designate deposition testimony to be used for impeachment purposes only. The parties should limit their designations to those that they actually intend to use at trial.**

Pursuant to Section 6.xi. of the Court's Individual Rules and Practices in Civil Cases, the parties attach: (a) a chart listing (1) the designations and counter-designations; (2) any objections, including the bases for such objections; (3) a brief response to each objection; and (b) transcripts of each relevant deposition with designations, counter-designations, and objections highlighted in different colors. Plaintiff's deposition designations, with counter-designations and objections, are attached hereto as **Exhibit A**. Defendants' deposition designations, with counter-designations and objections, are attached hereto as **Exhibit B**.

Further, pursuant to Section 6.A.xi.b of the Court's Individual Rules and Practices in Civil Cases, the parties attach annotated transcripts reflecting their designations and counter-designations of deposition testimony:

- **Exhibit C**, the annotated transcript from the deposition of Hani Abouhalka, has been intentionally omitted;

- Attached as **Exhibit D** is an annotated transcript from the deposition of David Berkman;

- Attached as **Exhibit E** is an annotated transcript from the deposition of Dr. Jeffrey Cohen;

- Attached hereto as **Exhibit F** is an annotated transcript from the deposition of Ricardo Estape;

- Attached hereto as **Exhibit G** is an annotated transcript from the deposition of Lee Glover;

- Attached hereto as **Exhibit H** is an annotated transcript from the deposition of Dr. Heather Gomer;

- Attached hereto as **Exhibit I** is an annotated transcript from the deposition of Steen Hansen;

- Attached as **Exhibit J** is an annotated transcript from the deposition of Paul Ritchie;

- Attached as **Exhibit K** is an annotated transcript from the deposition of Dr. Adam Saltman;

- Attached as **Exhibit L** is an annotated transcript from the deposition of Peter Shen;

- Attached as **Exhibit M** is an annotated transcript from the deposition of Dr. Patrick Treado;

- Attached as **Exhibit N** is an annotated transcript from the deposition of Dr. Alyssa Zrimsek;

Plaintiff has also designated, and Defendants have counter-designated, testimony from the deposition transcripts of Hani Abouhalka and Tamara Lanier, Defendants' 30(b)(6) representative. Defendants have notified Plaintiff that Mr. Abouhalka's and Ms. Lanier's annotated deposition transcripts are subject to Defendants' forthcoming motion to seal and will be filed separately by Defendants.

Pursuant Paragraph 4 of the Court's order governing the conduct of pretrial proceedings in this case (Dkt. 123), the parties' one-page synopses of the designated deposition transcripts will be separately served on each other and emailed to the Court.

**XII.** **A list by each party of all exhibits to be offered in its case-in-chief, with a single asterisk indicating exhibits to which no party objects on any ground. If a party objects to an exhibit, the objection should be noted by indicating the Federal Rule of Evidence that is the basis for the objection. If any party believes that the Court should rule on such an objection in advance of trial, that party should include a notation to that effect (e.g., "Advance Ruling Requested") as well. In general, the Court will rule on relevance and authenticity objections at the time of trial.**

Attached hereto as **Exhibit O** and **Exhibit P** are Plaintiff's and Defendants' exhibit lists, respectively.

**XIII.  A statement of the damages claimed and any other relief sought, including the manner and method used to calculate any claimed damages and a breakdown of the elements of such claimed damages.**

ChemImage seeks an Order requiring Defendants to pay ChemImage $171.34 million in damages, as follows:

- $40 million termination fee pursuant to the Agreement, plus $6.87 million in statutory pre-judgment interest running from the Termination Date to January 31, 2025.

- Impairment net of recovery on ChemImage's assets of approximately $108.96 million calculated using a Discounted Cash Flow method, plus $15.50 million in statutory interest running from July 4, 2023 to January 31, 2025.

ChemImage also seeks an Order requiring Defendants to pay $21,642,702.97 in ChemImage's attorneys' fees, which includes a 3x lodestar, and $2,886,704.02 in ChemImage's costs, as required by the Agreement. With leave of Court, these amounts will be further updated by declaration to the Court, following trial. ChemImage also seeks an Order requiring Defendants to pay pre-judgment interest and post-judgment interest, as applicable.

ChemImage further seeks a Declaration clearing all ChemImage patents and other intellectual property developed pursuant to the Agreement for unfettered use and development by ChemImage, consistent with a "without cause" termination under Section 10.4.4(a) of the Agreement.

**XIV.  A statement of whether the parties consent to less than a unanimous verdict.**

Not applicable. This trial is set to be tried without a jury.

Dated: New York, New York
       January 30, 2025

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: _____

Andrew J. Rossman
Alex Spiro
Courtney C. Whang
Ron Hagiz
295 Fifth Avenue
New York, New York 10016
Telephone: (212) 849-7000
Fax: (212) 849-7100
andrewrossman@quinnemanuel.com
alexspiro@quinnemanuel.com
courtneywhang@quinnemanuel.com
ronhagiz@quinnemanuel.com

James Bieber
865 S Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:  (213) 443 3000
Fax:  (213) 443-3100
jimmybieber@quinnemanuel.com

*Attorneys for Plaintiff*

PATTERSON BELKNAP WEBB &
TYLER LLP

By: _/s/ Rachel B. Sherman_____

William F. Cavanaugh, Jr.
Rachel B. Sherman
Diana Conner
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
Fax: (212) 336-2222
wfcavanaugh@pbwt.com
rsherman@pbwt.com
dconner@pbwt.com

*Attorneys for Defendants*

This Order (and the attachments, which appear as exhibits to ECF No. 134) are adopted by the Court, as modified by any rulings that the Court has made (at the final pretrial conference and before).

SO ORDERED.

March 13, 2025